THE STATE, J. DAYTON WINANS AND JOHN A. ABRY, PROSECUTORS, v. MOSES T. CRANE, COLLECTOR OF CRANFORD TOWNSHIP, UNION COUNTY.

1. Where by the act of March 26th, 1872, constituting a board of commissioners of highways of the township of Cranford, to consist of five persons, freeholders and residents in the township, for the purpose of laying out, &c., public roads, it was provided by section 3, that the said commissioners should be elected by the legal voters of the township, at the next annual town meeting after the passage of the act, and in the same manner in which the other officers of the said township are elected; four of them were to be elected from the four road districts of the township, and one elected at large, from any road district, as president of the board, and every two years there was to be an election at the annual town meeting, and if a vacancy occurred by death or a commissioner becoming a non-resident, the township committee was authorized to fill it; and at the first election Cox and Crane each received the same number of votes for commissioner at large and thereupon the town committee unanimously elected Cox, as president of the board. *Held*, that the election of Cox was legal, it having been in the manner as other township officers, and the action was warranted by the relation of the act of 1872, to the act of 1860, (*Nix. Dig.* 992,) in regard to the manner of election.

2. The action of commissioners in making assessments of damages and benefits for improvements is judicial, and a commissioner interested in the assessment, otherwise than as a general tax payer, is disqualified from acting on the fundamental maxim, that no man can be a judge in his own cause.

3. The effect of his interest is not confined alone to the commissioner interested, for the action of the whole body of commissioners is voidable, if the party interested took part in it, and even if there was a majority of the commissioners left, competent to act without his vote.

4. The fact that all power being lodged in the commissioners to lay out roads in the township, and that none could be laid if it happened that a majority of them were interested, unless they were permitted to act, will not create such a legal necessity as to have interested commissioners sit in judgment on their own cases.

5. Disqualifications by reason of interests that are common to all tax payers may be removed by the legislature, but the legislature has not the power, where the interest is peculiar and direct, to authorize an interested commissioner to decide his own cause, or to give effect, by a retrospective act, to any action of the commissioners in which he took part.

6. When the legislature provides for the exercise of judicial functions it cannot change their essential nature, and authorize a judgment in violation of the maxim that no person can be a judge in his own cause. That maxim is founded in natural justice and fundamental law, and is inherent in and a part of the nature of judicial action.

On *certiorari* to review the return of a public road in the township of Cranford.

Argued at June Term, 1873, before Justices BEDLE, WOOD-HULL and SCUDDER.

For the prosecutors, *R. S. Green.*

For the defendant, *J. Henry Stone* and *W. J. Magie.*

The opinion of the court was delivered by

BEDLE, J.   This *certiorari* brings up for review the return of a public road called South avenue, including the assessment for damages and benefits, and the subsequent proceedings thereon.   The road was laid out by a road board of five members, and the return signed by four of them, Cox, Horn, Elmendorf, and Hammer.   The first question of importance is in regard to the legality of the election of Cox.   Cranford township was set off by an act of March 14th, 1871, (*Laws,* 1871, *p.* 476,) and in it, by section ten, it was provided that all elections should be by ballot, until otherwise determined, according to law, and that all the provisions and restrictions of the act of 1860, authorizing the inhabitants of townships to vote by ballot and the supplements should apply to that township.   Among those provisions in the act of 1860, (*Nix. Dig.* 992, §§ 5, 6,)* the township committee had power to *elect between those having an equal number of votes for the same office.*   The road board is a creature of an act of March 26th, 1872, (*Laws,* 1872, *p.* 130,) and it provides for a board of commissioners of highways, to consist of five persons, freeholders and residents in the township, for the purpose of laying out, vacating and altering public roads in the town-

* *Rev., p.* 1201, §§ 45, 46.

ship.   It repealed all acts and parts of acts, authorizing sur-
veyors of the highways to perform those duties.   The com-
missioners, by section three, are to *be elected by the legal voters
in the township,* at the next annual town meeting after the
passage of the act, and "*in the same manner in which the other
officers of the said township are elected.*"   Their term of office
is two years.   Four of them were to be elected from the four
road districts of the township, and one elected at large from
any road district, as president of the board.   Every two years
there was to be an election at the annual town meeting, and
if a vacancy occurred by death or becoming a non-resident,
the township committee was authorized to fill it.   At the first
election, Cox and one Crane each received the same number
of votes for commissioner at large.   Thereupon the township
committee unanimously elected Cox as the chairman of the
board.   I think it quite clear that the committee had no
power to fill a vacancy except in the case of death or non-
residence, as provided in section three.   The act of 1872 con-
templates an election, and is inconsistent with any power in
the committee to appoint under the general township act, or
the act of 1860.   But, notwithstanding that, and without dis-
cussing any question of *de facto* holding, I am satisfied that
the action of the committee was warranted by the relation of
the act of 1872 to the act of 1860, in regard to the manner
of the election.   The manner of the election is the same as
other township officers, and that is determined by the act of
1860, which is, among other things, by ballot, by a plurality
of votes, and in case of a tie, that the committee shall elect
between those having an equal number of votes.   The object
of this is to give effect to the election, and is a mere mode of
determining the result.   That result may depend upon a
plurality or a majority of all the votes cast, or the action of
the committee as to the effect of a tie, according to the char-
acter of the legislation.   In this case, the course of legislation
is such as to give a result to the election.   Cox, therefore,
was legally elected.

State, Winans et al., Pros., v. Crane, Collector of Cranford Township.

The remaining question affects the legality of the action of the board, and that is attacked on the ground of the interest of Hammer, one of the commissioners in the assessment of damages and benefits. Abry, one of the prosecutors, was an owner of lands through which the road was laid. He was allowed nine hundred dollars for his damages, and assessed six hundred dollars for benefits. Hammer, the commissioner, was assessed for benefits fifty dollars. Hammer was directly interested in both the assessment for damages and benefits. In the former, in order that they might be as low as possible, so as to make less benefits to be assessed, and in the latter, that his neighbors should pay more than he, and his assessment be lower accordingly. The fact of his interest is undoubted; what then is the effect of it? To make assessments for improvements of this kind, requires action of a judicial nature. *State* v. *Newark*, 1 *Dutcher* 405. And one of the fundamental maxims of the law is, that no man can be a judge in his own cause. So tenaciously was this adhered to in our state, that the Court of Errors, in *Peck* v. *Freeholders of Essex*, 1 *Zab.* 656, held that the then Chief Justice of this court was disqualified from sitting in a cause, by reason of his being an inhabitant, freeholder and tax payer, in the county of Essex, and therefore interested in a suit to recover money for the county. Since then, the act of February 28th, 1849, (*Nix. Dig.* 441,)* was passed to remove that disqualification. The interest of Hammer was not as a general tax payer, but peculiarly personal, for although the power to assess for benefits has its origin in the great taxing power of sovereignty, still the principle upon which it is founded, is that each person should pay for the peculiar benefit received by his property from the improvement, and that it would be an injustice to the public to compel them to pay for advantages to individual lands. *State* v. *Fuller*, 5 *Vroom* 227. Another principle is, that local improvements of the nature of this before us, are presumed to benefit lands in their immediate locality, to the extent, generally, of their cost,

* *Rev.*, p. 889, § 264.

although the court will examine to see that private property is not taken for public use, without compensation.    5 *Vroom* ·227.

The very nature, then, of an assessment for benefits, makes it, in effect, but an adjustment among certain land owners of their liabilities to pay for advantages individually received, and any one familiar with the workings of municipal machinery in localities where the spirit of modern improvement runs rampant, knows full well that private interests, affected by this mode of payment for improvements, are not to be considered as too inconsiderable to operate upon the judgment of those interested.    This interest is very different from that of a mere general tax payer, which, in some cases, from the necessity of things, might be disregarded, or, if not so, could be relieved against by the legislature.    It is unnecessary to refer to cases to establish the disqualification of interest for judicial action, as it has its origin in the fundamental nature of laws.    A few references, however, may not be amiss. *Broom's Legal Maxims* 109; *Peck* v. *Freeholders of Essex*, 1 *Zab.* 656; *Com.* v. *Ryan*, 5 *Mass.* 90; *Com.* v. *Reed*, 1 *Gray* 472; *Pearce* v. *Atwood*, 13 *Mass.* 324; *Schroeder* v. *Ehlers*, 2 *Vroom* 50; *Com.* v. *McLane*, 4 *Gray* 427; *Dimes* v. *Prop'rs Grand Junct. Canal*, 3 *H. L. C.* 759; ·*Washington Ins. Co.* v. *Price*, *Hopk. Ch.* 2; *Cooley's Const. Lim.* 410.

The effect, also, of this interest is not confined alone to the person interested, for it is well settled that the infection spreads so that the action of the whole body is voidable, if the party interested took part in it, and even if there was a majority left without his vote.    This, of course, has no application to mere formal acts, or where there has been a consent that a person interested should act.    *Broom* 84, *Cooley* 413 and cases there cited.    The court will not enter into any examination to find out what influence the disqualified one may have exerted upon those with whom he acted.    That there may be no misunderstanding, it is well to state that the action of an interested judge is not void, but voidable only. That was settled in the great case of *Dimes* v. *Grand Junction Canal*, 3 *H. L. C.* 748.

State, Winans et al., Pros., v. Crane, Collector of Cranford Township.

A majority of these commissioners can form the board and perform its duties, (*Laws*, 1872, § 4, *p.* 831,) and three of the five have signed this return, but with them is Hammer, who was interested. It is the duty of the court, therefore, to set aside the whole proceedings, unless they can be sustained on other grounds, and those as presented are two, one of them the plea of necessity, the other an act of the legislature.

1. As to necessity : In this case, Hammer need not have acted, as there were three without him, but inasmuch as another of four kindred cases, of which this is one, involves this question of necessity, where two of the four commissioners are interested, it will now be met and be applicable to that case. It is said, that all power being lodged in these commissioners to lay out roads in Cranford township, none could be laid if it happened that a majority of them were interested, unless they were permitted to act. To justify a violation of the maxim, there should be an imperative reason for it, in order to prevent a failure of justice, and in determining that, the greatest care should be exercised, for, as said by Chancellor Sandford, in *Wash. Ins. Co.* v. *Price, Hopkins* 2, on the question of his sitting as Chancellor, when he was a stockholder in the company, " a failure of justice may take place, if he should not act, as it also may occur if he should decide his own cause."

In 3 *House of Lords Cases* 759, it was held, that although the Lord Chancellor was interested as a stockholder in a cause, yet there was a necessity, under an act of parliament, for him to sign the decree of the Vice Chancellor in order to an enrollment, and the enrollment being necessary to an appeal, and Baron Parke, in that same case, refers to a case in *The Year Books*, 8 *Hen.* 6, 19, where it was held that it was no objection to the jurisdiction of the Common Pleas, that an action was brought against all the judges, in a matter which could only be brought in that court. See, also, *Ranger* v. *Great Western R. Co.*, 5 *H. L. C.* 72. In these instances, there was an extreme necessity to permit those interested to

act; and so in Massachusetts, (*Commonwealth* v. *McLane*, 4 *Gray* 428,) the court state an exception to the rule, in these words: " Where, from the peculiar circumstances of the case, as in criminal districts having by law but one tribunal, or one or more magistrates alike interested, and from the necessity of the case, it must be taken that the statute creating the tribunal had virtually declared that such interest should not, in such cases, oust the court of jurisdiction, and thus wholly defeat the operation of the law." That was a case where a recognizance was taken before a justice residing in the town to which the forfeiture would go, and where the magistrates were all alike interested. To the same effect are, also, other cases referred to in the opinion of that court. In that case, the aid of the legislature, by force of the enactment, was invoked in addition to considerations of necessity alone. No case can, I think, be found where there has not been a very peculiar and emergent necessity to justify an exception to the rule. How is it in the present matter? The failure here would only deprive the township of a road which the inhabitants could more than likely get' along without, until the legislature provided for the difficulty, or until the disability was removed. I have known a whole county in this state to be unable to lay out a new road for a year, by reason of the failure of townships to properly elect or appoint surveyors of the highways, and for defective oaths of those elected, and I judge it is no uncommon thing in some parts of the state to be embarrassed in that respect. The public, generally, do not suffer very much, for awhile, in such an emergency.

If it be admitted that the legislature could empower interested commissioners to make the assessment, there is no such necessity here, as in the Massachusetts cases, as would justify the court in saying that the statute creating the board must be taken as declaring that they may act, if the road could not be otherwise laid. That conclusion could only be reached when from the express language of the statute, or as a necessary implication in the nature of things, it must irresistibly fol-

ow. It must be a very strong necessity where the interest is otherwise than as a general tax payer to support a presumption that the legislature intended a violation of the well known rule of law.

There was no legal necessity to have these interested commissioners sit in judgment on their own cases.

2. The other ground stated, is based upon an act of the legislature of March 11th, 1873, (*Laws*, 1873, *p*. 339,) section five, which was intended to correct the evil. It is a supplement to the Cranford township act, and provides that " whenever heretofore, or hereafter, a majority of the commissioners of highways signing any report, were or shall be competent and disinterested, such report shall not be considered illegal in consequence of any disability on the part of the other commissioners." This raises the question of the power of the legislature to abrogate that maxim of the law. That it may be done where the interest is only as a general tax payer, I think is clear. Such is the course of legislation in this state, and such is the effect of adjudication here and elsewhere. In Massachusetts, there are several cases holding that view. *Com.* v. *Ryan*, 5 *Mass.* 91 ; *Hill* v. *Wells*, 6 *Pick.* 105 ; *Com.* v. *Reed*, 1 *Gray* 472 ; *Com.* v. *McLane*, 4 *Gray* 427. In this state, in *Parsell* v. *State*, 1 *Vroom* 530, the Court of Errors held that the courts were bound to appoint surveyors of highways of the township where they resided, according to the requirement of the road act, notwithstanding they were tax payers of the township. It may therefore be considered as settled, that disqualifications for such interests as are common to all tax payers, may be removed by the legislature. Those interests are so remote and minute, that as a fact in most instances they would not influence the judgment, and therefore, and from public necessity, it may well be left to the legislature to determine whether they should not be disregarded.

Without that power, it would be almost if not impossible, in the practical administration of affairs in some cases, to do justice to the public or to individuals.

But the interest of this commissioner was of a different

character. It was peculiar and direct. In *Schroeder* v. *Ehlers*, 2 *Vroom* 44, the present Chief Justice inclined to the opinion that the rule that a man cannot be a judge in his own case, is so fundamental that the legislature cannot destroy it, and his references show the strong tendency of the English courts in the same direction, as respects an act of parliament. Lord Coke declared, while sitting judicially, that "even an act of parliament, made against natural equity, as to make a man a judge in his own case, is void in itself, for *jura naturæ sunt immutabilia*, and they are *leges legum*." *Hobart* 87 *a*. In England the courts would naturally avoid any decision affecting the omnipotence of parliament, and seek by possible construction to show an intent in every statute, consistent with common right and natural justice. That latter would also be the duty of the courts here if it could be done as it was done in Shroeder *v.* Ehlers. But the question cannot now be disposed of in that way. It must be distinctly met. Judge Cooley, in his valuable book, says, that he does not see, apart from the exceptions given, " how the legislature can have any power to abolish a *maxim which is among the fundamentals of judicial authority.* The people indeed, when framing their constitution may establish so great an anomaly, but if the legislature is entrusted with apportioning and providing for the exercise of the judicial power, we cannot understand them to be authorized, in the execution of this trust, to do that which has *never been recognized as being within the province of the judicial authority.* To empower one party to a controversy to decide it for himself, is not within the legislative authority; because it is not the *establishment of any rule of action or decision,* but is a placing of the other party, so far as that controversy is concerned, out of the protection of the law, and submitting him to the control of one whose interest it will be to decide arbitrarily and unjustly." *Const. Lim.* 412 ; see also on the same subject, *Ames* v. *Port Huron Co.,* 11 *Mich.* 139.

It seems to me that it cannot rationally be disputed that there exist certain legislative powers outside of written con-

stitutions and fundamental to the due exercise of sovereignty, and also certain legislative restrictions for the protection of the property of the people, alike fundamental. An instance of power, is that of the taking of private property for public use upon compensation, and it does not depend upon any constitution. It is an attribute of sovereignty. *Sinnickson* v. *Johnson*, 2 *Harr.* 145. An instance of restriction is, that private property cannot be taken for private use. The legislature cannot pass an act to take the land of one man and give it to another. That prohibition is not in the constitution, yet it lies deep in the fundamental nature of our government, which is intended, among other things, to secure the natural and inalienable rights of property. There are certain great principles of justice that the people have not parted with to their legislatures, and which cannot be violated without disregarding and defying the essential nature of our government and system of laws.

The maxim under consideration has always been regarded in English jurisprudence, as elementary and fundamental in judicial action, (*Coke Lit.*, § 212, *Broom* 109,) and, I think, can no more be materially invaded by the legislature, than it could pass an act that a judge might decide according to lot, or for a party who should give him the most money. The Chief Justice, in Schroeder *v.* Ehlers, says, " that a person cannot be a judge in his own case, has ever been regarded as one of the fundamental maxims of the law of nature;" also, that the injustice of allowing it, is intuitive in the human mind. In my judgment, the legislature is impotent to break down this great barrier to tyranny and fraud. The power of the legislature has been seriously questioned even in removing disabilities for a common interest, and the fair implication of the cases is, considering the ground upon which it is sustained, the remoteness and smallness of the interest, that it does not reach beyond interests of a general nature. (See cases referred to.) The maxim is inherent in, and a part of the nature of judicial action, and although in many matters the legislature may provide for the exercise of judicial functions, and

designate the persons who shall exercise them, yet it cannot, in so doing, lose sight of the essential character of judicial action, and authorize or sanction a judgment through instrumentalities contrary to the innate and universally recognized sense of natural justice. In such a case, the power conferred would not be judicial, it would be tyrannical.

· The legislature could not have directly authorized these commissioners, if interested, to decide their own cases, and certainly a retrospective act of the same character ought not to be sustained. But the act in question seeks to cure the taint by expunging the objectionable commissioners from the board, and giving effect thereby to the action of the remaining three. In other words, the object is to separate the action of one commissioner from the others after the mischief, and to abridge the influence that his interest would otherwise have. That will not help it, for the law does not sever the action that is tainted. The whole is affected. It is an entirety. A majority of the board could have legally acted without Hammer, but he having taken part in the proceedings, the whole was voidable on proper application. To sanction an act of the legislature, ratifying it in such a mode, would be indirectly crippling the natural force and effect of the maxim, and depriving the prosecutors of its reasonable protection.

·The effort to cure the difficulty was futile, and the return, with all subsequent proceedings, must be set aside.