EDWARD M. PYATT, CHARLES W. SMITH, STEPHEN J. BRISKEY, ARNOLD B. ENGELHARDT, EDWARD B. DIX, AND J. C. GRIFFITH, PLAINTIFFS-APPELLANTS, v. MAYOR AND COUNCIL OF THE BOROUGH OF DUNELLEN IN THE COUNTY OF MIDDLESEX, AND ART COLOR PRINTING COMPANY, A CORPORATION OF THE STATE OF NEW YORK AUTHORIZED TO TRANSACT BUSINESS IN THIS STATE, DEFENDANTS-RESPONDENTS.

Argued April 28, 1952—Decided May 26, 1952.

Mr. *Joseph J. Mulnick* argued the cause for appellants.

Mr. *John E. Toolan* argued the cause for respondents (*Messrs. Toolan, Haney & Romond,* attorneys).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. This appeal to the Appellate Division, certified of our own motion, brings up a judgment entered in the Law Division which adjudged two ordinances adopted December 28, 1949, by the Mayor and Council of the Borough of Dunellen to be valid, and dismissed the complaint of appellants and others in lieu of prerogative writ to set the ordinances aside.

The first ordinance vacates 1,400 feet of South Avenue abutted on each side by lands and structures comprising the plant of defendant, Art Color Printing Company. South Avenue runs east from Washington Avenue toward Plainfield. The vacated portion is the first 1,400 feet east from the intersection. The second ordinance provides for a detour traffic route to skirt the south and east sides of the Art Color Printing Company property. The detour is a semi-circle utilizing a parallel street, Columbia Street, which also starts at Washington Avenue. Columbia Street would be widened and extended northeast from its present dead end at an athletic field and playground, across lands partly of the playground and partly of Art Color Printing Company, to intersect with South Avenue east of the vacated portion. The ordinance provides that the expense and widening and extending Columbia Street shall be borne wholly by Art Color Printing Company.

The ordinances were adopted at the instance of the company, which is in the business of printing popular magazines having large volume circulation. It is Dunellen's largest industry (the population of the borough is about 6,500), employing 374 residents who have 525 dependents and receive wages in excess of one and a half million dollars annually, or almost one-quarter of the company's total annual payroll. Taxes paid by the company amount to approximately 15 per cent of the borough's tax revenue. The company advised the borough governing body that to maintain its position in the industry expansion of its present inadequate facilities is necessary and that the only feasible method of

expansion is in width across South Avenue. It was suggested that unless expansion across South Avenue was permitted it would be necessary for the company to move the plant to another municipality where adequate room is available.

The ordinances were adopted by a four to two vote of the borough council. Two of the affirmative votes were cast by councilmen who at the time were employed by Art Color Printing Company.

A witness from the State Highway Department listed South Avenue in the group of the second most heavily travelled highways of the State. A traffic count made by the State Highway Department in April, 1950, showed that the street was traversed by 2,282 trucks and passenger vehicles in a 24-hour period. Washington Avenue is also a heavily trafficked thoroughfare carrying traffic between State Highways 25 and 29. The traffic into or from South Avenue turns from or into Washington Avenue or crosses Washington Avenue from and to Newmarket Road opposite South Avenue. It was testified by the witness that the detouring of this heavy volume of traffic would, because of the turns and curves along the detour route, both slow up the flow of traffic and increase traffic hazards, as well as create a peril to children using Columbia Street to reach the athletic field and playground. Columbia Street is now a quiet residential street of 16 residences and is rarely used by vehicles.

The appellants, all of whom are residents of Columbia Street, and other plaintiffs not parties to the appeal who reside on Newmarket Road, filed their complaint to have the ordinances set aside on the grounds, among others, that the plan authorized by the ordinances "is a perversion of the statutory power delegated to" the municipality, "is palpably not in the public interest, and abets the purposes of a private interest, the defendant, Art Color Printing Company," that the vacation ordinance divests "the public of its rights in South Avenue, a street dedicated to and accepted for public use, improved by public funds, and for many years a highly useful and valuable artery of traffic"; further that both

ordinances are illegal "in that they were voted for by persons having special interests therein and incapable of acting impartially.".

■ A preliminary question as to the standing of appellants to prosecute the appeal is raised by defendant, Art Color Printing Company. The company contends that appellants did not establish that they will suffer any special injury under the ordinances beyond that sustained by the public generally. The point is without merit. If the plan is completed appellants' street will be entirely transformed from a quiet street to a busy highway. There was also expert testimony that the change would seriously depreciate the values of appellants' residences. Plainly they have an interest in the matter which is special and entirely distinct from that of the community as a whole, or that of owners of property in the borough not so situated, and this interest is amply sufficient to give them a standing to attack the ordinances. *Cf. Speakman v. Mayor and Council of North Plainfield,* 8 *N. J.* 250 (1951).

■ Appellants argue first that the borough council failed to find that the vacated portion of South Avenue is useless as a street, and contend that the vacation ordinance is therefore necessarily invalid. The discretion of a governing body when exercising the power to vacate streets delegated to municipalities under *R. S.* 40:67–1(*b*) is not so limited. The governing body is not restricted to the consideration merely of the continuing utility of the street proposed to be vacated. The controlling criterion is whether the closing will be in the service of the general public interest. To that inquiry whatever is relevant for or against the proposed closing and bears upon the public interest in the particular circumstances ordinarily not only may, but should, be considered. And judicial superintendence is confined largely to ascertaining whether factors other than such as bear upon the public welfare influenced the action in a manner which vitiates it. The policy and wisdom of the vacation of a street when founded upon considerations confined to the service of the public interest is not the concern of the courts.

The rule is that "* * * unless tainted with fraud, or palpably not in the service of the public interest, or otherwise a clear perversion of power," there is no occasion for judicial intervention. *Con Realty Co. v. Ellenstein,* 125 *N. J. L.* 196 (*Sup. Ct.* 1940) ; *Downs v. Mayor, etc., of South Amboy,* 116 *N. J. L.* 511 (*E. & A.* 1936) ; *Kean v. City of Elizabeth,* 54 *N. J. L.* 462 (*Sup. Ct.* 1892), affirmed 55 *N. J. L.* 337 (*E. & A.* 1893) ; *Sherwood v. City of Paterson,* 88 *N. J. L.* 456 (*Sup. Ct.* 1915), affirmed 88 *N. J. L.* 738 (*E. & A.* 1916) ; 11 *McQuillin, Municipal Corporations* (*3d ed.* 1950), *p.* 133.

Appellants next argue that the ordinances upon the facts presented are palpably not in the service of the public interest but in the primary interest only of Art Color Printing Company, and thus are invalid within the exception to the rule stated in *Con Realty Co. v. Ellenstein, supra.* They argue further that the first ordinance by its terms postpones the actual physical vacation of the portion of South Avenue until such time as Columbia Street shall be extended as provided under the second ordinance, and is therefore invalid, citing *Hammer v. City of Elizabeth,* 67 *N. J. L.* 129 (*Sup. Ct.* 1901). They contend that as the second ordinance provides for the widening and extension of Columbia Street at the expense of Art Color Printing Company without limitation as to the time when the work is to be performed (that determination being left entirely to the discretion of the company), and without any provision for the protection of the municipality by way of performance bond or otherwise to assure the doing and completion of the work according to the plans and specifications required by the ordinance to be filed with the borough engineer, that ordinance improperly delegates authority to a private company, and is invalid. And it is also argued that the entire scheme must fail because Art Color Printing Company is under no binding obligation to the municipality actually to expand its plant but that the governing body merely accepted "in faith" the

local plant manager's statement of the company's intention in that regard.

We do not find it necessary to pass upon these several contentions of the appellants. Nor need we consider the intimation in appellant's brief that the ordinances may be invalid for failure of the governing body, prior to the adoption of the ordinances, to obtain the recommendation of the borough planning board. The Planning Act, *R. S.* 40:55-1 *et seq.*, as amended, provides that any municipality may by ordinance establish the master plan created by the borough planning board to be the official map of the municipality, *R. S.* 40:55-8. In such case the governing body before, among other things, "widening or closing * * * any public way * * * designated * * * as part of the official map," is required to refer the proposal to the planning board for its recommendation. *R. S.* 40:55-9. The borough mayor testified that the instant ordinances were not submitted to the borough planning board for its recommendation prior to adoption. Nothing appears, however, to suggest that the master plan has been made the official map of the borough or even that there is a master plan.

The ordinances must, in any event, be set aside upon the final ground urged by appellants, that is, that the affirmative votes by which they were adopted were infected with the taint of self-interest. The council deliberated as a *quasi*-judicial tribunal when deciding whether to pass the ordinances. The process calling for the exercise of discretion by the governing body according to the weight of conflicting public considerations is judicial in quality. Therefore, the ordinances are voidable if any one of the councilmen who participated as *quasi*-judges was at the time disqualified by reason of private interest at variance with the impartial performance of his public duty. *Kuberski v. Haussermann,* 113 *N. J. L.* 162 (*Sup. Ct.* 1934); *Van Gilder v. Board of Chosen Freeholders of County of Cape May,* 83 *N. J. L.* 139 (*Sup. Ct.* 1912); *Drake v. Elizabeth,* 69 *N. J. L.* 190 (*Sup. Ct.* 1903). It is an ancient principle of Anglo-American

justice that "no man shall be a judge in his own cause." *Bonham's Case*, 8 *Co.*, 113 *b*, 118 *a*, 77 *Eng. Rep.* 646, 652 (*K. B.* 1610).

Two of the affirmative votes were cast by Councilmen Reitz and Lambert, respectively a photoengraver and a linotype machinist employed by Art Color Printing Company. The vote of a majority of the members of the council present at the meeting was necessary to final passage of the ordinances. *R. S.* 40:93–1. Reitz and Lambert and two other councilmen comprised the majority of the six councilmen present when the ordinances were finally passed.

Reitz upon his cross-examination below affirmed testimony he had given in an earlier proceeding in which he had said that his trade of photoengraving "is a highly skilled trade," "one of the best paying trades in the country," "in fact, I may say the world"; that during his career he had seen the dislocations experienced by craftsmen of his trade when large printing concerns were forced to change their locations because of technicological and other changes in industry "and realizing the conditions what made these other concerns move out of New York to get advantageous locations where they could expand, that is why I was so interested in this here, because I would not like to see the Art Color stifled in their expansion, *because I have seen so many jobs move out of New York, and we had to go with them. We had to go all over the country*" (emphasis supplied) ; further, "This is a thing we (members of the photo-engraving trade) have got to meet today, and that was my primary interest in advocating this here, and voting this expansion of the Art Color." He was asked, "So that you were practically considering the welfare of the company, your employer, were you not," and he answered, "I was considering the welfare of my fellow workers and myself and the company too," "and the town." Reitz had come to Dunellen to take employment with the Art Color Printing Company nine years before when the company moved to Dunellen from New York.

Plainly Reitz' vote was not primarily motivated by the

consideration whether the ordinances were advisable in the interest generally of the citizens of Dunellen. The conclusion is inescapable that his principal concern was his probable personal dislocation if the Art Color Printing Company moved elsewhere. Such personal interest disqualified him from voting on the ordinances. Public policy forbids the sustaining of municipal action founded upon the vote of a member of the municipal governing body in any matter before it which directly or immediately affects him individually.

There is no like testimony of Lambert, the linotype machinist, and we do not know whether he would be as directly affected personally if the company moved from Dunellen. However, it is most doubtful that participation by a councilman in a municipal action of particular benefit to his employer can be proper in any case. We do not reach that question here because, in any event, the taint of Reitz' self-interest permeates Lambert's vote and the votes of the two councilmen not employed by Art Color Printing Company who voted with him and Reitz. "The infection of the concurrence of the interested person spreads, so that the action of the whole body is voidable." *State, West Jersey Traction Co. v. Board of Public Works of City of Camden,* 56 *N. J. L.* 431, 440 (*Sup. Ct.* 1894), affirmed 57 *N. J. L.* 710 (*E. & A.* 1895).

Defendant, Art Color Printing Company, conceding the rule, argues that the circumstances do not bring the case within its reach, relying upon *Downs v. Mayor, etc., of South Amboy, supra.* That case, however, turned upon the recognized single exception to the rule, that is, "that if by the disqualification of a judge there would be no means of proceeding, he may take such cognizance of the case as is absolutely necessary" (*supra,* 116 *N. J. L.,* at *page* 515). The facts here do not bring the case within this rule of stern necessity. *Cf. Rinaldi v. Mongiello,* 4 *N. J. Super.* 7 (*App. Div.* 1949). Four members of the borough council were sufficient for a quorum and although at least three affirmative

votes were then necessary to adopt the ordinances, the mayor had a vote in the case of a tie. *R. S.* 40 :93–1.

The judgment is reversed and the case remanded to the Law Division with direction to enter judgment in favor of the plaintiffs setting aside the ordinances.

*For reversal*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN —6.

*For affirmance*—None.