37 N.J. Super. 486 (1955)
117 A.2d 646
CLIVE W. PRESSEY AND FRED WATTS, PLAINTIFFS,
v.
TOWNSHIP OF HILLSBOROUGH, A MUNICIPAL CORPORATION, DEFENDANT-RESPONDENT AND GEORGE W. VAN CLEEF, DEFENDANT, AND GEORGE C. GILBERT, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 17, 1955.
Decided October 28, 1955.
*487 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. John T. Keefe argued the cause for the defendant-appellant.
Mr. George W. Allgair argued the cause for the defendant-respondent (Messrs. Allgair, King & Kelleher, attorneys).
*488 The opinion of the court was delivered by FREUND, J.A.D.
The plaintiffs, Pressey and Watts, taxpayers of the Township of Hillsborough, initiated this proceeding on December 24, 1954 to enjoin the township and George Van Cleef, the then mayor, from entering into a contract for the purchase of a Galion Grader, and to declare invalid an authorizing motion of the township committee adopted on December 23. On January 6, 1955 the complaint was amended by adding as a party defendant George C. Gilbert, Inc., the seller of the grader. The township answered the complaint and counterclaimed against Gilbert, seeking the same relief as the taxpayers, namely, the invalidation of the contract and the return by Gilbert of an old grader which it had taken from the Township in trade as part payment for the new grader. Gilbert cross-claimed against the municipality for the purchase price. Van Cleef was later dropped as a party defendant because after December 31, 1954 he was no longer mayor.
After issue was joined, Gilbert moved for summary judgment and thereupon the parties stipulated that the entire case should be submitted and decided on affidavits presented in lieu of oral testimony. The trial court declared the contract contrary to public policy and illegal, entered judgment in favor of the Township on its counterclaim against Gilbert, and dismissed the latter's cross-suit against the township, wherefore Gilbert appeals.
During 1954 George Van Cleef was Mayor of Hillsborough. For a year or so prior thereto, and at least until October 31, 1954, he was a salesman in the employ of George C. Gilbert, Inc., which held an exclusive franchise for the sale of Galion Road Graders in central New Jersey, including Somerset County. Van Cleef, together with Richard Musa and David W. Amerman, comprised the township committee. The position of township road supervisor had been held for many years by Harold Docherty, who has had 27 years' experience in road construction and maintenance, including 16 years' experience with power graders. Early in 1954 following discussion among the committeemen there was included in the *489 1954 budget, and the township appropriated, $10,000 for the purchase of a new grader, but there was no decision as to its size or make. Van Cleef urged the purchase of a Galion Grader, and Musa acceded, but both Amerman and Docherty were opposed, because after investigation of various types they considered the Galion Grader as unsuitable for the Township's needs. At a meeting held on May 21, 1954 Van Cleef supported by Musa argued for Galion equipment while Amerman and Docherty still opposed it.
Some time following the May meeting Amerman "saw Mayor George Van Cleef and informed him that he, George Van Cleef, could not act in our buying a grader because of his interest in the matter as an employee of George Gilbert." This statement is undenied. Nevertheless, Van Cleef persisted in urging a Galion Grader. On October 21, 1954 and subsequently he proposed to Amerman that if he "would go along with the buying of a Galion Grader" he, Van Cleef, would appoint as magistrate of the township an attorney rather than a layman, as Amerman had suggested. When Amerman refused to barter his opposition, "Mayor Van Cleef said that he was going to see to it that we buy a Galion Grader saying, `I'll resign from Gilberts so that we can buy it'"; and "that he was getting a raw deal in respect to the purchase of the grader." Upon Amerman's continued refusal to submit to Van Cleef's proposal, he appointed a layman as magistrate. There is no denial of these accusations.
At a meeting held on December 9, 1954 Van Cleef stated "the grader is much needed and we are going to buy one" and that he would entertain a motion to that effect. Musa thereupon moved that "a $10,000 grader" be purchased. Amerman refused to second the motion, whereupon Van Cleef left the chair and seconded the motion, which was carried two to one. Another motion for the advertisement for bids for the grader was similarly seconded and carried. When Amerman said he did not understand what was to be advertised for, Van Cleef replied "we will give the specifications." The minutes made no reference to the kind of a grader to be purchased *490 or advertised for. However, by direction of Van Cleef an advertisement was inserted in the Somerset Star for sealed proposals for the "purchase of a Galion Model 303 Gasoline Powered Tandem Drive Motor Grader" with detailed specifications therefor. Significantly, although the resolution for the purchase did not specify a "Galion" or any kind of grader, the advertisement called for sealed bids for nothing but a "Galion Model 303."
Only one bid was submitted, that of the defendant, George C. Gilbert, Inc., which was accepted by the township committee at a meeting held on December 23, 1954 by the votes of Van Cleef and Musa, opposed by Amerman. The purchase price was $10,064, less an allowance of $200 by Gilbert for a 1938 grader owned by the township. On or about December 29 Amerman called Gilbert's place of business "and left word that he should not deliver the road grader allegedly purchased by the Township of Hillsborough and that he was not to take the 1938 grader which belonged to the Township." Notwithstanding this caution, Gilbert delivered the new grader and took the old one.
Van Cleef had been defeated for renomination in the 1954 primary election and his successor took office on January 1, 1955. On January 3, 1955, the township committee by the vote of Amerman and the new mayor rescinded the purchase of the grader because it was not in the best interest of the township and had been improperly authorized.
It is contended by Van Cleef that he resigned his employment with Gilbert on October 31, 1954, and that he was not to receive any profit or compensation by reason of the sale to the municipality. This alleged resignation, however, was not disclosed to the committeemen nor was it made public until after the institution of this suit. Indeed, Docherty in his affidavit alleges "Mayor Van Cleef never told me that he had quit the employment of George C. Gilbert, Inc. Mayor Van Cleef has so far as I can ascertain never under oath stated that he does not intend to resume his employment with George C. Gilbert, Inc. when this case is over." Charles Philippi, a resident of the township, avers that Van *491 Cleef in November 1954 stated that "he was going back (to George C. Gilbert, Inc.) after the first of the year." The only other mention of Van Cleef's resignation is in the affidavit of Amerman that on October 31, 1954 Van Cleef threatened to resign so that a Galion Grader might be purchased. In our view of the case it is immaterial whether Van Cleef did in fact sever his employment with Gilbert in October, because when he initiated and persisted in his efforts to have a Galion Grader purchased he occupied the dual positions of mayor of the municipality and employee of the seller of the equipment.
The record presents a callous disregard of the most elementary principles governing the legal and moral obligations of municipal officers to the community which they have been elected to serve, as well as of those dealing with them. However elementary, these principles should be briefly restated: Public office is a public trust, created in the interest and for the benefit of the people. Public officers stand in a fiduciary relationship to the people whom they have been elected or appointed to serve. The specific subject was exhaustively covered and the authorities collated in Driscoll v. Burlington-Bristol Bridge Co., 10 N.J. Super. 545 (Ch. 1950), modified on other grounds 8 N.J. 433 (1952), certiorari denied Burlington County Bridge Comm. v. Driscoll, 344 U.S. 838, 73 S.Ct. 25, 97 L.Ed. 652 (1952), rehearing denied 344 U.S. 888, 73 S.Ct. 181, 97 L.Ed. 687 (1952). The following excerpt from 8 N.J., at pages 474 and 475 of the opinion of Chief Justice Vanderbilt is particularly pertinent:
"As fiduciaries and trustees of the public weal they [municipal officers] are under an inescapable obligation to serve the public with the highest fidelity. In discharging the duties of their office they are required to display such intelligence and skill as they are capable of, to be diligent and conscientious, to exercise their discretion not arbitrarily but reasonably, and above all to display good faith, honesty and integrity. * * * They must be impervious to corrupting influences * * *. When public officials do not so conduct themselves and discharge their duties, their actions are inimicable to and inconsistent with the public interest, and not *492 only are they individually deserving of censure and reproach but the transactions which they have entered into are contrary to public policy, illegal and should be set aside to the fullest extent possible consistent with protecting the rights of innocent parties. * * * These obligations are not mere theoretical concepts or idealistic abstractions of no practical force and effect; they are obligations imposed by the common law on public officers and assumed by them as a matter of law upon their entering public office. The enforcement of these obligations is essential to the soundness and efficiency of our government, which exists for the benefit of the people who are its sovereign."
Because of its aptness here, Chief Justice Cardozo's classic description of the standard of behavior demanded of a fiduciary merits repetition:
"Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 546, 62 A.L.R. 1 (Ct. App. 1928).
Van Cleef as mayor and as salesman for Gilbert occupied inconsistent positions in the purchase of a grader by the municipality. He ought not have participated in the transaction. This is not to say that it would have been improper for the municipality to purchase equipment distributed or sold by his employer, but the selection of the equipment and the terms of purchase should have been left to the other officers of the municipality, free from persuasion, influence or participation by Van Cleef. The fact that a municipal officer is an employee of or interested in a firm manufacturing or selling equipment or commodities which the municipality has occasion to purchase, does not, ipso facto, prohibit the purchase of such equipment or commodity, but the selection and purchase should be on a competitive basis by officials of the community without the participation or influence of the individual municipal officer who is affiliated directly or indirectly with the seller. Indeed, N.J.S. 2A:135-8 expresses the statutory prohibition against such action:
*493 "Any member of the * * * governing body of a municipality * * * who * * *c. Is directly or indirectly interested in furnishing any goods, chattels, supplies or property to or for the * * * municipality * * * the agreement or contract for which is made or the expense or consideration of which is paid by the * * * governing body of which such member is a part  Is guilty of a misdemeanor."
The continuous, persistent and prolonged efforts of Van Cleef to induce and influence the members of the township committee to purchase a Galion Grader were contrary to law, being clearly violative of his fiduciary position as mayor. The trial court found, and we concur, that the purchase, being the result of illegal conduct, was invalid. However strenuously Van Cleef may insist that he had severed his employment with Gilbert as of October 31, his resignation was not public knowledge  in fact, not even the township committee nor Docherty, the road supervisor, was informed of it. The fact that his persistent efforts to have the township purchase a Galion Grader extended over a period of many months, during most of which time he was employed by Gilbert, cannot but give rise to the suspicion despite his denial that such a purchase would be to his financial benefit. Otherwise, his insistence on a "Galion" over the opposition of Amerman and Docherty, a road expert, was without meaning.
A municipal corporation cannot bind itself by a contract which is against public policy and all persons contracting with the municipality are held to know its limitations. Those who make contracts with public officers are charged with knowledge of whether or not the proper formalities have been observed, and whenever a principal if acting in the matter for himself would have received notice, the knowledge of his agent shall be chargeable to him. Driscoll v. Burlington-Bristol Bridge Co., supra. In the instant case. Gilbert knew Van Cleef's position in the municipal government; it knew of the advertisement, and before delivery of the grader was warned by Amerman of the illegality, notwithstanding which it proceeded to conclude the transaction.
We have reached the conclusion that the contract of purchase *494 was illegal because contrary to public policy, and therefore find it unnecessary to discuss the other points raised by the appellant.
Judgment affirmed, with costs.