42 N.J. Super. 495 (1956)
127 A.2d 190
ROBERT S. ALDOM, ET AL., PLAINTIFFS-APPELLANTS,
v.
BOROUGH OF ROSELAND, A MUNICIPAL CORP., JOHN BAKER, MAYOR, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 29, 1956.
Decided November 27, 1956.
*497 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Roy J. Grimley argued the cause for the appellants.
Mr. Fred G. Stickel, III, argued the cause for the respondents Borough of Roseland, et als. (Messrs. Stickel & Stickel, attorneys).
Mr. Everett B. Smith argued the cause for the respondents Henry Becker & Son, Inc., Farms Inc., Henry E. Becker, et al. (Mr. Walter G. Brandley, attorney).
Mr. Milton Bruck argued the cause for the respondents Jennie Rubenstein, et al. (Messrs. Bruck and Bigel, attorneys).
*498 The opinion of the court was delivered by FRANCIS, J.A.D.
This appeal concerns the validity of an ordinance amending the zoning ordinance of the Borough of Roseland. A number of citizens and taxpayers initiated the challenge by procedure in lieu of prerogative writ. The Law Division sustained the municipal action.
Roseland is a small suburban community in northwest Essex County, of about 2,300 acres and with a population of about 2,200 persons. It is conceded in respondents' brief that Henry Becker & Son, Inc. (of which Henry E. Becker has majority stock ownership) owns about 1,100 of these acres.
On May 13, 1952 the borough adopted a zoning ordinance which established five use districts: Residence No. 1, Residence No. 2, Residence No. 3, Retail Business and Light Industrial. The Light Industrial zone consisted of 275 acres, of which about 100 acres have not yet been put to that use. That this remaining portion is suitable and entirely adaptable to the purpose is not questioned. The Becker interests own 90 of these unused acres and over half of the remaining vacant land.
Prior to the change in the ordinance which gave rise to this litigation, Henry Becker & Son, Inc., requested a rezoning of five of its acres to industrial use. The planning board declined to approve it on three occasions. On appeal following the last attempt the council, apparently largely upon advice of counsel that it would be considered spot zoning, sustained the board but (according to the minutes) referred back to the board the question of the suitability of zoning the "general location for residential use * * * with the recommendation of the Mayor and Council that the entire area be rezoned for industrial use." The formal resolution dated October 12, 1954, was not as strongly worded. It resolved that the board "seriously consider rezoning the entire area of similarly situated property in this general location from residential to industrial use."
On October 19 the planning board met and discussed the resolution. The minutes indicate that Councilmen Hilton *499 and Leonard "were present and joined in informal discussion of the question."
On October 29, after further consideration, the board decided to request the council "to more fully define the area in which they wish a reconsideration of the zoning." Upon receipt of the request, a meeting of the council was had November 9, at which time Councilman Hilton moved that an executive meeting be held on November 16 and that "Mr. Becker be invited to attend, in order to get clarification on this property involved * * * and also to have Mr. Becker present any further plans on rezoning that he may have in mind in the Borough * * *."
At the council session of November 16 the mayor explained to Mr. Henry ("Gene") Becker why he was asked to attend. Becker said he "was reluctant" to seek rezoning for more than the five acres involved in the application which had been rejected as spot zoning "because he doesn't need it." But he thought "the Borough should do what they see fit to get away from spot zoning" and he would offer "no objection to any additional rezoning in the area." Then he outlined the further changes in zoning he had "in mind for the Borough."
The planning board convened on December 7 and took up the matter. At this time, according to the minutes, "a marked blue print of the present zoning maps indicated further areas of Mr. Becker's property that he would like to see rezoned." After studying "Mr. Becker's map" some views were expressed regarding the suggested changes, but it was decided that the "extended proposals" should be discussed at a public hearing to be held on January 4, 1955.
Following this public hearing the board recommended the additions to the industrial zone which were subsequently adopted by the council through the amendatory ordinance now under attack. All of the land rezoned except for approximately ten acres is owned by the Becker interests. Concurrently with the recommendation the board unanimously recorded "its considered opinion that these are the ultimate extensions of the industrial zone."
*500 The amendatory ordinance incorporating the suggestions of the planning board was drawn by the borough attorney. It was submitted thereafter to the planning board and approved as required by N.J.S.A. 40:55-35.
At the public hearing conducted by the council on the amendatory ordinance a citizen suggested that since Councilman Leonard is an employee of Henry Becker & Son, Inc., it would be unethical for him to vote on the question and requested his abstention. A similar challenge was interposed by a member of the planning board in connection with the earlier appeal by Becker to which reference has been made. Leonard did not withdraw on either occasion. He voted in favor of adoption of the ordinance, although neither his vote (nor that of Councilman Hilton, to be discussed hereafter) was necessary for passage. See Pyatt v. Mayor and Council of Dunellen, 9 N.J. 548, 557 (1952).
The record reveals without dispute that Councilman Leonard is employed by Henry Becker & Son, Inc., as cashier in general charge of routes and office manager; he has worked for the company for 23 years.
Councilman Hilton is the owner of substantially all of the stock of Cocalico Poultry Farms, Inc., which packages eggs for the Becker company. The eggs are sold in containers which bear the legends "Distributed by Henry Becker & Son, Inc." and "Packed by Cocalico Poultry Farms, Newark, New Jersey."
On this appeal the amendatory ordinance is said to be void because of the participation of Leonard and Hilton in the municipal adoptive action, and because it represents an unlawful exercise of the zoning power of the borough. In our judgment, only the first ground need be considered.
A public office is a public trust. Borough councilmen, as fiduciaries and trustees of the public interest, must serve that interest with the highest fidelity. The law tolerates no mingling of self interest; it demands exclusive loyalty. Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 474 (1952), certiorari denied Bell v. Driscoll, 344 U.S. 838, *501 73 S.Ct. 34, 97 L.Ed. 652 (1952); Ames v. Board of Education of Montclair, 97 N.J. Eq. 60, 64 (Ch. 1925). The theory is that a public officer assumes the same fiduciary relationship toward the citizens of his community as a trustee bears to his cestui que trust. Pressey v. Township of Hillsborough, 37 N.J. Super. 486, 491 (App. Div. 1955), certification denied 20 N.J. 303 (1956). They have the right to expect that in everything that appertains to their business or welfare, he will exercise his best judgment, unaffected and undiluted by anything which might inure to his own interest as an individual.
A quasi-judicial action of a municipal body is rendered voidable by the voting participation of a member thereof who is at the time subject to a direct or indirect private interest which is at variance with the impartial performance of his public duty.
This common law doctrine found its genesis in a necessary and compelling public policy. Ames v. Board of Education of Montclair, supra; People ex rel. Schenectady Illuminating Co. v. Board of Sup'rs, 166 App. Div. 758, 151 N.Y.S. 1012 (App. Div. 1915); Stroud v. Consumers' Water Co., 56 N.J.L. 422, 428 (Sup. Ct. 1894). It has found its way into statutes which deal with specific matters. For example, by legislative fiat no member of a planning board is permitted "to act on any matter in which he has, either directly or indirectly, any personal or financial interest." N.J.S.A. 40:55-1.4; Zell v. Borough of Roseland, 42 N.J. Super. 75 (App. Div. Oct. 15, 1956); Hochberg v. Borough of Freehold, 40 N.J. Super. 276 (App. Div. 1956). And a statute of similar import makes it a crime for a member of the governing body of a municipality to be directly or indirectly interested in any contract to furnish goods, chattels, supplies or property which are to be paid for by that body. N.J.S. 2A:135-8.
In this connection it is interesting to note that the Public Officers Law of New York established a code of ethics for public officers which proscribes "any interest, financial or otherwise, direct or indirect, * * * which *502 is in substantial conflict with the proper discharge of [their] duties in the public interest." 46 McKinney's Consolidated Laws of N.Y. Ann., § 74(2) (Supp. 1956); 18 Id., Executive Law § 74 (Supp. 1956).
In the present case, did the dual status of Mr. Leonard as borough councilman and employee of Becker, Inc., require him to disqualify himself and to refrain from joining in the deliberative action of the governing body in enacting the amendatory ordinance?
The interest which disqualifies is not necessarily a direct pecuniary one, nor is the amount of such an interest of paramount importance. It may be indirect; it is such an interest as is covered by the moral rule: no man can serve two masters whose interests conflict. Basically the question is whether the officer, by reason of a personal interest in the matter, is placed in a situation of temptation to serve his own purposes to the prejudice of those for whom the law authorizes him to act as a public official. And in the determination of the issue, too much refinement should not be engaged in by the courts in an effort to uphold the municipal action on the ground that his interest is so little or so indirect. Such an approach gives recognition to the moral philosophy that next in importance to the duty of the officer to render a righteous judgment is that of doing it in such a manner as will beget no suspicion of the pureness and integrity of his action. People ex rel. Schenectady Illuminating Co. v. Board of Sup'rs, 88 Misc. 226, 151 N.Y.S. 830 (Sup. Ct. 1914), affirmed 166 App. Div. 758, 151 N.Y.S. 1012 (App. Div. 1915); Tuscan v. Smith, 130 Me. 36, 153 A. 289, 73 A.L.R. 1344 (Sup. Jud. Ct. 1931); In re Conant, 102 Me. 477, 67 A. 564 (Sup. Jud. Ct. 1907); 43 Am. Jur., Public Officers, § 266 (1942). More specifically, it has been said in connection with the making of a municipal contract:
"If his interest in the contract [here, sheet metal foreman of the proposed corporate contractor] is such as would tend in any degree to influence him in making the contract, then the instrument is void because contrary to public policy, the policy of the law being that *503 a public officer in the discharge of his duties as such should be absolutely free from any influence other than that which may directly grow out of the obligations that he owes to the public at large." Stockton Plumbing & Supply Co. v. Wheeler, 68 Cal. App. 592, 229 P. 1020, 1024 (App. Ct. 1924). (Insertion ours)
The decision as to whether a particular interest is sufficient to disqualify is necessarily a factual one and depends on the circumstances of the particular case. Gland v. Mayor, etc., North Arlington, 13 N.J. Misc. 521 (Sup. Ct. 1935); 63 C.J.S., Municipal Corporations § 991 (1950). But in appraising the interest there is no essential difference between cases arising under prohibitory statutes and those necessitating application of the common law. And it may be noted as a factor that the validity of the officer's action does not rest upon proof of fraud, dishonesty, loss to the municipality or whether he was in fact influenced by his personal interest, or whether the contract or other type governmental step was desirable or undesirable from a public standpoint. 63 C.J.S., supra, § 990.
Our present Supreme Court set aside an ordinance for the vacation of a public street which abutted the property of the corporate employer of two of the councilmen of a municipality. The primary purpose of the vacation was to permit the expansion of the plant of the corporation across the street area. It was suggested that unless the action was taken, removal to another municipality would be necessary. In spite of the fact that the corporation was the largest local industry, employed a substantial number of citizens, and that the particular councilman, whose interest was regarded as prejudicial to the public welfare, was a comparatively minor employee, the ordinance was invalidated. Pyatt v. Mayor and Council of Dunellen, supra. Likewise, the former Supreme Court adjudged illegal a resolution authorizing the payment of a bill for services rendered by a firm of accountants because a member of the borough council was an employee of the firm, although not so employed when the work was done. Gland v. Mayor, etc., North Arlington, supra.
*504 In a leading New York case, People ex rel. Schenectady Illuminating Co. v. Board of Sup'rs, supra, the board of supervisors of the county bought Mazda lamps of the value of $7.74 from the Illuminating Co. The price was fair; the lamps were necessary; there was no fraud and no intentional wrong done. The stock of the company was owned by the General Electric Company. One member of the public board was an employee of General Electric and he had been given a share of stock to qualify him as a director of the Illuminating Co. The purchase of the lamps was held violative of the statute forbidding a public officer to have a direct or indirect interest in any such contract.
The same view was taken in California when Crescent City purchased $249.66 of supplies from the corporate employer of one of the members of the council. The councilman was not a stockholder and had no direct pecuniary interest in the company. He was employed on a salary as its manager.
The court said:
"The statute declares that a transaction consisting of the `furnishing of any supplies' for a city or town, in which an officer is `directly or indirectly' interested, shall be void. As manager of the mercantile business, which employment demanded strict loyalty to his employer, it may be inferred Dressler, as a councilman, was not free to negotiate a bargain in behalf of the city as favorable to the municipality as though these conflicting interests did not exist. Dressler's membership on the council may reasonably be expected to influence his associates in purchasing supplies for the city. The desire to favor a fellow councilman, unwarranted confidence, or carelessness in bargaining for supplies might result in a substantial loss to the city. It is not necessary to show actual fraud, dishonesty, or loss to invalidate the transaction. The purpose of the statute is to remove all indirect influence of an interested officer as well as to discourage deliberate dishonesty.

* * * * * * * *
"Although Mr. Dressler had no greater interest in the transaction than is shown by the mere agency as business manager of the store from which the supplies were purchased, even though they were obtained in perfect good faith at favorable prices, still the transaction was void and the claims were illegally allowed." Hobbs, Wall & Co. v. Moran, 109 Cal. App. 316, 293 P. 145, 147 (App. Ct. 1930).
*505 The rule was applied also to a contract for the doing of the plumbing, heating and ventilating work on a public building, when a member of the council was in the employ of the contractor as a sheet metal foreman. It made no difference that the employer's bid was the lowest submitted and that the councilman took no part in the awarding of the contract. Stockton Plumbing & Supply Co. v. Wheeler, supra. Quaere, Pressey v. Township of Hillsborough, supra, 37 N.J. Super. 492.
Although research has disclosed no case in New Jersey within our statute condemning contracts where the public officer was in a management echelon of his employer similar to those involved in the California cases (except perhaps, Gland v. Mayor, etc., North Arlington, supra), in scope our decisions are analogous. Cordingley v. Borough of Mendham, 12 N.J. Misc. 331 (Sup. Ct. 1934); Ames v. Board of Education of Montclair, supra; Drake v. City of Elizabeth, 69 N.J.L. 190 (Sup. Ct. 1903); Stroud v. Consumers' Water Co., supra.
Wakefield v. Mayor, etc., Caldwell, 9 N.J. Misc. 44 (Sup. Ct. 1930), has been pointed to as expressing a contrary view. This one-page per curiam opinion filed more than 25 years ago neither cites nor discusses any pertinent cases; it is referred to and set apart in an annotation on the subject in 140 A.L.R. 344, 353 (1942) as an "exceptional" case; it is directly opposed to the well reasoned opinion of the Nebraska Supreme Court in City of Lincoln v. First Nat. Bank, 146 Neb. 221, 19 N.W.2d 156 (1945); and it is contrary to the spirit if not the letter of the Stroud, Ames, Cordingley, Gland and Pyatt cases above set forth. Under the circumstances, we do not find it to be controlling here.
In our view, the fundamental issue of direct or indirect interest, which is common to the contract cases, whether they arise from a legislative ban or not, as well as to situations involving transactions like the present one, is not so transmuted because no direct or indirect pecuniary advantage can be shown as flowing immediately to the employer or *506 employee-councilman as to require a judgment sustaining the ordinance. Such advantage, where it exists, is simply a circumstance bearing on the resolution of the ultimate problem. As already indicated, the final determination must rest on the particular facts.
The status of the Becker company, Leonard's employer, may be likened to that of the contractor in the ordinary case. It is the principal and major beneficiary of the borough's action; the River Oaks ten acres represent a minor part of the zone change. In addition to other circumstances, some further idea of the overall value of the advantage to the Becker company is represented by the planning board opinion given to the council that this zone change should be considered as the ultimate in expansion of the area allocated to light industry.
The extent of the Becker company's concern with the proposed enlargement of the industrial zone can be gathered from the exhortative and obviously expensive brochure distributed to the citizenry prior to the January 4, 1955 planning board public meeting. It discloses that options had been given or promised named manufacturers for the acquisition of 58 1/2 to 60 1/2 acres in locations then zoned for residence. The estimated assessed valuation of the contemplated structures and the tax return thereon were stressed. And an argument was presented against holding the land for sale to developers who "in spite of zoning will make Roseland into another Livingston along with its terrifically high taxes and near bankruptcy."
Citizens opposing the plan circulated fliers before the council acted, charging that "Roseland is being pressured into becoming a factory town." Both sides sought signatures on petitions favoring their views.
It was in this kind of an atmosphere that the amendatory ordinance was enacted. The meetings of the planning board and the council were crowded. One member of the planning board expressed the opinion that emotions ran high. It is not difficult to imagine the intensity of feeling of the *507 principal protagonists involved nor of the importance of action favorable to the Becker plans.
This was the milieu in which Leonard was called upon to discharge a public duty demanding undivided loyalty; to exercise an independent, unprejudiced discretion as a public official. Men in public life are occasionally in self-conflict as to whether to do as they please or to do as they ought. The former results in capricious and arbitrary action, the latter in the exercise of a just discretion.
The personal or private interest which disqualifies may be identified generally as one which is different from that which the public officer holds in common with members of the public. Leonard had been in the employ of Becker, Inc., for over 23 years; he held a position of responsibility there. It is only natural to expect that over such a period of time a loyalty to his employer had developed and that to some extent it would pervade his general thinking. A question cannot be avoided as to whether that loyalty or a pure sense of civic obligation brought him to the October 19, 1954 planning board meeting and motivated his participation in the informal discussion of the council resolution suggesting that serious consideration be given to rezoning the area surrounding the five-acre plot involved in the original Becker application. That there was psychological pressure on him moving against unqualified devotion to public duty throughout the pendency of the problem, no one would deny. That pressure consciously or unconsciously would have the natural tendency to turn him in the direction in which his vote was cast. In such a situation the rule of law, based as it is on human experience, safeguards him and the public against the extraneous influence; it causes the "cup" to pass from him; it disqualifies him from acting at all. In our judgment, the rule was applicable in this instance and barred his vote on the ordinance.
The fact that the measure had sufficient affirmative votes to pass without his participation, does not save it from being voided. For, as the Supreme Court reiterated in Pyatt v. Mayor and Council of Dunellen, supra, "[t]he *508 infection of the concurrence of the interested person spreads, so that the action of the whole body is voidable." 9 N.J., at page 557.
It was argued that establishment of the principle we are announcing would disserve the public interest because it might operate to influence substantial and civic-minded citizens, who have outside business connections, against membership in elective or appointive public agencies. That result is extremely doubtful. The rule disqualifies only where personal and public loyalties come into conflict. In those rare instances such high-minded persons undoubtedly will welcome the disqualification.
In view of the result we have reached, it is not necessary to decide whether the business relation between Councilman Hilton and Henry Becker & Son, Inc., constitutes a disqualifying interest. See Pyatt, supra, 9 N.J., at page 557. For the present it seems sufficient to refer to Judge Clapp's language in Hochberg v. Borough of Freehold, supra, 40 N.J. Super., at page 284:
"It might be added that, as a matter of ethical practice under a statute such as N.J.S.A. 40:55-1.4, and quite apart from the obligations of the law, whenever a substantial question is raised as to the disinterestedness of one of several officials sitting on a matter, and the other officials can take care of the case, it usually is just as well for the official in question to withdraw therefrom so that not the faintest shadow be cast on the integrity of the determination."
And see Zell v. Borough of Roseland, supra.
The borough argues further that adoption of the ordinance was a legislative act which should not be interfered with by the judicial branch of the government "unless tainted with fraud, or palpably not in the service of the public interest, or otherwise a clear perversion of power." Pyatt, supra, 9 N.J., at page 554. It is true that review of a purely legislative act of a local governing body is normally beyond the judicial orbit except in the instances stated. However, here the function was not exclusively legislative; it partook sufficiently of the quasi-judicial to warrant examination by the courts. The superintendence *509 of the council over the approval by the planning board of the zoning changes, the deliberative function involved in considering the conflicting arguments which arose at the required public meeting, the fact that only one person controls about 90% of the benefited land, and, in the factual setting, the nature of the decision to exercise the police power, which is at the root of all zoning, cannot be ignored. Pyatt, 9 N.J., at page 553; and compare: Stevens ex rel. Kuberski v. Haussermann, 113 N.J.L. 162, 168 (Sup. Ct. 1934); Van Gilder v. Board of Chosen Freeholders of Cape May County, 83 N.J.L. 139, 141 (Sup. Ct. 1912); State ex rel. West Jersey Traction Co. v. Board of Public Works, 56 N.J.L. 431, 437-440 (Sup. Ct. 1894), affirmed per curiam Camden Horse R. Co. v. West Jersey Traction Co., 57 N.J.L. 710 (E. & A. 1895); Stroud v. Consumers' Water Co., supra, 429; State, Winans v. Crane, 36 N.J.L. 394 (E. & A. 1874); In re Conant, supra.
We have concluded also, for the reasons expressed at the conclusion of the Zell case, not to venture upon a discussion of the amendatory ordinance itself. That determination will have to await a further and proper consideration of the matter by the borough.
The judgment is reversed for the reasons stated.