109 N.J. Super. 116 (1970)
262 A.2d 426
BOARD OF EDUCATION OF THE TOWN OF WEST ORANGE IN THE COUNTY OF ESSEX, A CORPORATION, APPELLANT,
v.
INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 68, AND THE PUBLIC EMPLOYMENT RELATIONS COMMISSION, AN AGENCY OF THE STATE OF NEW JERSEY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 22, 1969.
Decided January 21, 1970.
Supplemental Argument February 2, 1970.
Decided February 24, 1970.
*118 Before Judges SULLIVAN, CARTON and HALPERN.
Mr. Samuel A. Christiano argued the cause for appellant.
Mr. Victor J. Parsonnet argued the cause for respondent, International Union of Operating Engineers, Local No. 68 (Messrs. Parsonnet, Parsonnet & Duggan, attorneys).
The opinion of the court was delivered by CARTON, J.A.D.
West Orange Board of Education (board) appeals from a determination of the Public Employment Relations Commission (PERC) that the International Union of Operating Engineers, Local 68, is entitled to act as negotiating agent for "all custodians, assistant custodians, drivers, maintenance workers, firemen and matrons" employed by the board in its school system.
The dispute centered around the board's refusal to recognize the union's right to represent head custodians, the board contending that employees in this category were management or supervisory employees and should not be included in the same unit as the custodians whom they supervise. The governing legislation (New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 et seq.) specifically prohibits supervisory personnel having the power to hire, discharge, discipline or to effectively recommend the same, to be represented by a bargaining unit which includes nonsupervisory personnel.
After a hearing conducted at the direction of PERC, the hearing officer, a member of the New York Bar, filed a *119 report concluding that these employees were properly included in the same unit as the rank-and-file custodians. PERC adopted this report and recommendation and ordered a secret election to be held to decide whether its members desired to be represented by the union. The union won.
The board raises two issues: (1) the decision of PERC should be set aside because it is infected with a conflict of interest in that one of its commissioners is a partner in the law firm which represented the union in the proceeding before it, and (2) the finding that head custodians should be included in the bargaining unit was improper. In view of the conclusion we have reached, we do not reach the second issue.
The pertinent facts are brief and undisputed. One of the seven members of the Commission is an attorney who is also a partner in the law firm representing the union. This member participated in the decision challenged here. The vote of the Commission was unanimous.
The Rules Governing New Jersey Courts mandate that a judge in any court disqualify himself when he is closely related to any party or any attorney in the action. R. 1:12-1. These rules further provide that he disqualify himself if he "is interested in the event of the action" or "when there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." R. 1:12-1(e),(f). See also Canons 13, 24 and 34 of the Canons of Judicial Ethics.
We perceive no valid reason why the conduct of those acting in a quasi-judicial capacity should be governed by a lesser standard. Cf. Kremer v. City of Plainfield, 101 N.J. Super. 346, 352 (Law Div. 1968). The same considerations of public policy expressed in the rules which require neutrality and impartiality on the part of a judge rendering decisions in a court of law are present in the adjudicative process involved here.
*120 These considerations are well known and require little elaboration. The presence or absence of good faith or honest motives is not the test. Representatives of the public acting in a judicial or quasi-judicial capacity must be required to perform their duties free of any interest, personal or pecuniary, possessing the potentiality of influencing their judgment.
As the court succinctly pointed out in S & L Associates, Inc. v. Washington Tp., 61 N.J. Super. 312 (App. Div. 1960), rev'd in part on other grounds, 35 N.J. 224 (1961), the interest which disqualified an official need not be a direct or pecuniary one. The question involved is
* * * whether the public official, by reason of a personal interest in the matter, is placed in a situation of temptation to serve his own purposes, to the prejudice of those for whom the law authorizes him to act. The validity of his action does not rest upon proof of fraud, dishonesty, loss to the municipality, or whether he was in fact influenced by his personal interest. * * * [61 N.J. Super., at 329]
Along the same lines is the comment of the court in Aldom v. Borough of Roseland, 42 N.J. Super. 495 (App. Div. 1956), dealing with a similar issue involving a municipal agency:
And in the determination of the issue, too much refinement should not be engaged in by the courts in an effort to uphold the municipal action on the ground that his interest is so little or so indirect. Such an approach gives recognition to the moral philosophy that next in importance to the duty of the officer to render a righteous judgment is that of doing it in such a manner as will beget no suspicion of the pureness and integrity of his action. * * * [at 502]
The union urges that no disqualification exists because the Legislature has specifically authorized the procedure followed here. We do not agree.
It is true that N.J.S.A. 34:13A-5.2 provides for the appointment of seven members, two to be representative of public employers, two representative of public employee organizations, and three representative of the public. It *121 does not follow that the representatives thus chosen are intended to be anything more than representatives of the "philosophy" of their respective sides. A clear distinction must be made between representation of a general point of view (i.e. public employers or public employee organizations) and advocacy on behalf of a client having a special interest in a case being decided by the tribunal of which the representative is a member. As the statute itself provides:
No member or officer of the board having any financial or other interest in a trade, business, industry or occupation in which a labor dispute exists * * * shall be qualified to participate in any way * * * with the settlement * * * thereof. [N.J.S.A. 34:13A-10]
This prohibition is applicable to members of the PERC under N.J.S.A. 34:13A-5.2.
Nor does the principle expressed here disserve the public interest "because it might operate to influence substantial and civic-minded citizens, who have outside business connections, against membership in elective or appointive public agencies." See Aldom v. Borough of Roseland, supra, at 508, where the court comments further: "The rule disqualifies only where personal and public loyalties come into conflict. In those rare instances such high-minded persons undoubtedly will welcome the disqualification."
In this case the board maintained from the inception of the litigation that a conflict of interest situation existed. It did not suggest and there is no suggestion that any wrongdoing actually occurred. But there is no doubt that the member in question, sitting as he did in a quasi-judicial capacity, was called upon to judge a case being handled by his own law firm. His membership in that firm was an active one. It is clear to us that it was improper for him to act in that capacity and that he should have disqualified himself from participating in the decision of the Commission. Such participation is contrary to the policy of the foregoing authorities which complement the "ancient *122 principle of Anglo-American justice that `no man shall be a judge in his own cause.' Bonham's Case, 8 Co., 113 b, 118 a, 77 Eng. Rep. 646, 652 (K.B. 1610)." Pyatt v. Mayor, etc. of Borough of Dunellen, 9 N.J. 548, 555-556 (1952). And see New Jersey State Board of Optometrists v. Nemitz, 21 N.J. Super. 18, 36-37 (App. Div. 1952).
The facts of this case do not come within the single "stern necessity" exception which permits an "interested" judge to hear a case where his disqualification would perpetually foreclose the adjudicatory proceeding. Pyatt v. Mayor, etc., of Borough of Dunellen, supra, at 557. The conflict of interest is of such nature that it not only invalidated the vote of the disqualified member but also tainted and rendered void the action of the Commission. This is so even though there were sufficient votes to carry the decision after eliminating the interested vote. Aldom v. Borough of Roseland, supra, at 507. See Hochberg v. Borough of Freehold, 40 N.J. Super. 276, 283-84 (App. Div. 1956).
We turn now to the additional question, raised by the court after oral argument, whether the disqualified member's law firm may not also be disqualified from representing the client in any future proceeding in this matter under the jurisdiction of the Commission as long as this member remains on the Commission. We have heard further oral argument on this issue and afforded counsel the opportunity to submit supplemental briefs.
It cannot be seriously argued that the attorney could properly represent a client before the Commission while he retained his membership thereon. Consideration of professional duties and responsibilities which an attorney, as an officer of the court, owes to the public leads inexorably to the conclusion that he cannot undertake such representation. It matters not that the office has not, in fact, been improperly utilized in this case. Nor is the principle altered because the individual concerned is a prominent and highly regarded attorney and consequently that there is no likelihood of any such occurrence. The objection goes *123 not to the individual involved but the dual nature of the functions that person must perform.
The position of a member of the bar who also serves the public in a quasi-judicial capacity such as the one here concerned is one of extreme sensitivity and great responsibility. A compelling public interest dictates that the attorney should not place himself in a situation which harbors a temptation to serve his own interest or that of a client to the prejudice of those for whom the law authorizes him to act as a public official. Cf. Aldom v. Borough of Roseland, supra. It is of perhaps equal importance that he should not be placed in a position which, in the eyes of the public, presents the opportunity of such a risk. "[W]here public confidence is at issue, what people think is true may be as important as what is true." Reilly v. Ozzard, 33 N.J. 529, 554 (1960) (dissenting opinion). Cf. R. 1:12-1(f).
The controlling principle finds cogent expression in Opinion 88 of the Supreme Court Advisory Committee on Professional Ethics, 89 N.J.L.J. 49 (1966):
Running through all our opinions, in this area of conflict, is the prevailing theme that, where the public interest is involved, every situation which affords a chance for impropriety, however slight, should, if possible, be avoided in order to eliminate public suspicion that an attorney in public office will use his position or influence in behalf of a client. And this is so whether he is the attorney for or a member of a public body, board or agency.
Canon 31 of the Canons of Judicial Ethics refers to the analogous duties of a practicing attorney who at the same time serves in a part-time judicial capacity, in the following language:
In such cases one who practices law is in a position of great delicacy and must be scrupulously careful to avoid conduct in his practice whereby he utilizes or seems to utilize his judicial position to further his professional success.
He should not practice in the court in which he is a judge, even when presided over by another judge, or appear therein for himself in any controversy.
*124 Here, again, we observe that there is no reason why a lesser criterion of conduct should be applied to a practicing attorney serving at the same time in a quasi-judicial capacity.
What we have said applies with equal force to members of the firm. The incompatibility may seem less evident and be more subtle, but the principle remains the same. See Drinker, Legal Ethics, 106 (4 ed. 1963). In this respect "a lawyer may not do what his partner may not do." Opinion 78 of the Supreme Court Advisory Committee on Professional Ethics, 88 N.J.L.J. 460 (1965). Compare R. 1:15-1(c) with R. 1:15-4 and R. 1:12-1. To permit representation before the Commission by the member's firm would render the court's proscription of such representation by the member himself a futile gesture and would undermine the policies mandating that proscription. Consequently, as long as the disqualified member remains on the Commission, no member of his firm may represent the client before that body.
In view of the special nature of the dispute involved and the fact that it arises under recently adopted legislation in this area, rather than exercise our original jurisdiction to decide the case on the merits, we deem it preferable to remand the matter for a new determination (within 45 days from the date hereof) by the Commission sitting without the disqualified member. Neither that member nor his firm may continue to represent the client in the controversy before the Commission. There is nothing in the record which indicates to us that the defect in the determination of the Commission extends to the action of the hearing officer or requires that a new hearing be held or a new report be made by the hearing officer to the Commission.
We retain jurisdiction. No costs.