PHILIP W. TAYLOR, PLAINTIFF-APPELLANT, v. SALEM COUNTY BOARD OF CHOSEN FREEHOLDERS, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 12, 1986—Decided July 30, 1986.

Before Judges FRITZ and BAIME.

*Edgar Hathaway Jr.* argued the cause for appellant.

*Daniel A. Zehner* argued the cause for respondent.

*W. Cary Edwards,* Attorney General of New Jersey, filed a brief amicus curiae (*James J. Ciancia,* Assistant Attorney General, of counsel; *Mark J. Fleming,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

FRITZ, P.J.A.D.

By way of an action in lieu of prerogative writs, a citizen challenges a resolution of the Salem County Board of Freeholders (Freeholders) appointing four members to the Salem County Community College Board of Trustees (Board of Trustees). The Law Division judge heard the matter on the merits and dismissed the complaint. Our judgment is not in accord with that and we reverse.

Plaintiff's challenge is bifold. He asserts that the Freeholders did not comply with *N.J.S.A.* 18A:64A–8 requiring the appointment of a search committee for the nomination of individuals to serve on the Board of Trustees. He insists that an employee of the county college, a member of the Board of Freeholders, should be disqualified by conflict of interest from voting for the appointment of any trustee. We believe each of these arguments is sound.

The findings of fact in the oral decision of the trial judge are not nearly so plentiful nor precise as we might have liked. However, there appears to be no meaningful dispute respecting any significant facts, and it is obvious that the judge below decided the issues as matters of law. Questions of law are clearly involved. The comments of this paragraph merely

indicate that we do not believe ourselves bound by the dictates of *Rova Farms Resort v. Investors Ins. Co.*, 65 *N.J.* 474 (1974) to the acceptance of unexpressed findings of fact.

 We turn to the alleged statutory violation. First, it is abundantly clear from the record—the fact is conceded—that the "appointing authority," *i.e.*, the Freeholders, simply did not "establish" a trustee search committee. It may well be that past practices were followed and that a Freeholder chose persons to serve as a de facto search committee to nominate individuals for the trusteeships. But as the trial judge observed, "[G]ood practice would indicate that when the legislature says you shall do something, you ought to do it." The statute is explicit. It says, "The appointing authority of the county *shall* establish a trustee search committee...." (Emphasis supplied.) "If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent." *State v. Butler*, 89 *N.J.* 220, 226 (1982). The selection of nominating personnel by one individual is not at all substantial compliance with a statute which specifies that a search committee shall be established by the appointing authority.

The statutory scheme, *N.J.S.A.* 18A:64A–1 *et seq.*, reflects an intent to insulate county colleges from the corrosive effect of party politics. "This plan for education has been carefully formulated over the years and has a firm constitutional foundation. ... It embodies a policy of independence and freedom from political control for all forms of public education, ... including public higher education." *Bd. Trustees Mercer Cty. Comm. College v. Sypek*, 160 *N.J.Super.* 452, 461 (App.Div. 1978), certif. den. 78 *N.J.* 327 (1978) (citations omitted).

Obviously the trial judge himself had a little trouble with this. His determination that there was "substantial de facto compliance" was predicated upon his conclusion that "there was at least as good an effort made to comply with the statute as had been done before." This followed his observation, "I make

no comment with respect to the question that this was done on a one-party basis with a two-party board because it hadn't been done at all prior to that." He concluded:

> Now, I think in the future, Mr. Zehner [counsel for Freeholders], the board [of Chosen Freeholders] might well consider whether they ought not to organize on the first of January and to appoint a committee right away. You do what you want. I mean, I just, I can see problems coming up. The fact that they arose in this case indicates that there's something going to be looked at."

■ With respect to matters of an alleged conflict of interest, we note at the outset that such a sensitive issue defies precise formulation. That which constitutes a disqualifying interest is controlled by the facts and circumstances of each particular case. *Van Itallie v. Borough of Franklin Lakes*, 28 *N.J.* 258, 268 (1958). Government would have difficulty functioning "if every possible interest, no matter how remote and speculative, would serve as a disqualification of an official." *Id.* at 269. But "[t]he citizens of a community have a right to expect that a public official in the performance of his duty will exercise his best judgment unaffected by anything which will inure to his personal advantage," *id.* at 265, and so the rule of disqualification for interest was promulgated "to prevent the *possibility* of an official in a position of self-interest being influenced thereby to deviate from his sworn duty to be guided only by the public interest." *McNamara v. Saddle River Borough*, 64 *N.J.Super.* 426, 429–430 (App.Div.1960). Here, then, the question of law becomes one of whether under the facts of this case, there is a possibility that the Freeholder whose voting is impugned might be influenced in his vote by his personal interest in the situation. We examine that question guided substantially by *Aldom v. Borough of Roseland*, 42 *N.J.Super.* 495, 502 (App.Div.1956), where the following appears:

> Basically the question is whether the officer, by reason of a personal interest in the matter, is placed in a situation of temptation to serve his own purposes to the prejudice of those for whom the law authorizes him to act as a public official. And in the determination of the issue, too much refinement should not be engaged in by the courts in an effort to uphold the municipal action on the ground that his interest is so little or so indirect. Such an approach gives recognition to the moral philosophy that next in importance to the duty of the officer to render a righteous judgment is that of doing it in such a manner as will beget no suspicion of the pureness and integrity of his action.

Translated into the facts and circumstances of this case, the question becomes one of whether voting by a public official on the appointment of one who will become (or not become) his employer in an outside employment begets any suspicion of "the pureness and integrity of his action." To posit the quesion is to answer it.

We think the Freeholder involved realized this as well, for he abstained on a number of preliminary resolutions and, significantly, on the critical final resolution—until it lost by a tie vote. Then the following appears in the minutes:

Mr. Dyer [the Freeholder Director]: Mr. Ahl would you like to reconsider your vote?

Mr. Ahl: Mr. Chairman, since the November election the people elected the majority party to carry out the business of county business. While I prefer to abstain on business pertaining to the College, the will of the electorate supersedes my desire to abstain. Therefore, I vote in favor of the resolution.

We are not confident that even the "will of the electorate" should be permitted to engender actions the pureness and integrity of which may, in the eyes of the citizens of the community, be suspect.

Accordingly, we reverse and enter judgment for plaintiff declaring that Resolution 85–82 is null and void. No costs.