192 N.J. Super. 101 (1983)
469 A.2d 96
BERNARD A. SOKOLINSKI, MARCIA JACOBSON, WOODBRIDGE TOWNSHIP ZONING BOARD OF ADJUSTMENT, JEROME ROBINSON, PATRICK O'BRIEN AND LEO LA SALLE, PLAINTIFFS-APPELLANTS,
v.
MUNICIPAL COUNCIL OF THE TOWNSHIP OF WOODBRIDGE, FRANMAR BUILDERS, INC., ALICE HOLDER, JAMES KAKLAR, PETER KARDOS, RICHARD O'CONNELL, HANDLY-WALKER DATA SERVICES, INC., DEFENDANTS-RESPONDENTS, AND BOARD OF EDUCATION TOWNSHIP OF WOODBRIDGE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 11, 1983.
Decided December 2, 1983.
*102 Before Judges BISCHOFF, PETRELLA and BRODY.
Wayne J. Peck argued the cause for plaintiffs-appellants.
Stewart M. Hutt argued the cause for appellant Board of Education Township of Woodbridge (Hutt, Berkow, Hollander & Jankowski, attorneys; Stewart M. Hutt of counsel; Stewart M. Hutt and Robert J. Mascenik on the brief).
Michele R. Donato argued the cause for respondents Alice Holder, James Haklar, Peter Kardos and Richard O'Connell (Frizell & Pozycki, attorneys; Michele R. Donato on the brief).
No brief was filed on behalf of respondent Municipal Council of the Township of Woodbridge.
Respondents, Franmar Builders, Inc. and Handly-Walker Data Services, Inc., adopted the argument of plaintiffs-appellants.
The opinion of the court was delivered by BRODY, J.A.D.
The issue in this declaratory judgment suit is whether three members and two alternate members of the Woodbridge Board of Adjustment are disqualified from hearing variance applications for property owned by the Woodbridge Board of Education. Two of the five are employed by the Board of Education: a tenured teacher and a tenured janitor. The other three are spouses of Board of Education employees: a tenured teacher, an *103 untenured bus driver and an untenured cafeteria manager/cook. Judge Richard Cohen found that all five have a conflict of interests and ruled that therefore none could participate in the variance proceedings. We affirm.
Reduced student enrollment led the Board of Education to close six schools located in residential zones. It authorized the sale of each school on the condition that the purchaser obtain any variance he may seek. The schools were separately sold at public auction for the total sum of $1,294,500. Thereafter the Board of Adjustment heard use variance applications for two of the properties. It granted one and denied the other. Each was appealed to the governing body where a councilman raised the conflict issue. The Board of Adjustment and its challenged members thereupon brought this suit. Use variance applications for the other properties are pending.
The Board of Adjustment consists of seven members and two alternate members. N.J.S.A. 40:55D-69. Four members constitute a quorum but the Board cannot grant a use variance without the affirmative vote of at least five members. N.J.S.A. 40:55D-70(d). Thus although the Board of Adjustment can convene a quorum in these matters, because of the five disqualifications the remaining four members cannot grant a use variance.
A public official is disqualified from exercising the authority of his office in any matter in which he has a personal or financial interest which conflicts with his public duty. Aldom v. Borough of Roseland, 42 N.J. Super. 495, 501-503 (App.Div. 1956). The Legislature codified this principle as it applies to members of a board of adjustment in N.J.S.A. 40:55D-69 which provides in relevant part:
... No member of the board of adjustment shall be permitted to act on any matter in which he has, either directly or indirectly, any personal or financial interest.
*104 Plaintiffs argue that there can be no conflict between the interests of the Board of Education and the Board of Adjustment because both are public bodies constituted to conserve the public treasury. This comparison falls far short of a fair description of their institutional interests in this case. The Board of Education is interested in obtaining variances so that it can realize the highest price for its schools. The Board of Adjustment is interested in maintaining the proper use of land consistent with "the intent and purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70. The economic advantage of the owner or of the taxpayers generally is not the primary concern of the Board of Adjustment. The fact that the Board of Education and the Board of Adjustment are both public bodies should not blur the important distinction between their different and sometimes conflicting functions and goals.
A member of a board of adjustment, like any taxpayer, is understandably inclined to favor increasing public revenues to contain taxes. However, unlike other taxpayers, he has a specific duty not to sacrifice the proper use of land on the altar of reduced taxes. This conflict is tolerated because it inheres whenever a variance is sought that would increase public revenues. But when the applicant is the member's employer, an additional conflict occurs which is avoidable and therefore not acceptable. As our Supreme Court has said, "... [I]t is most doubtful that participation by a councilman in a municipal action of particular benefit to his employer can be proper in any case." Pyatt v. Mayor and Council of Dunellen, 9 N.J. 548, 557 (1952).
The Board of Education particularly benefits from the grant of these variances. Money realized from the sale of the schools and money saved by not having to maintain them will ease the Board's revenue requirements. Also, individual Board members standing for re-election can point to these sales as an accomplishment.
*105 Plaintiffs argue that their employment by the Board of Education is inconsequential because it is at a low level, removed from management and insulated by law from reprisal. In Griggs v. Princeton Borough, 33 N.J. 207, 219 (1960), the court repeated the dictum in Pyatt that employment of a public official by a party appearing before him is probably a per se reason for disqualification and it disqualified two councilmen employed as professors by Princeton University, thereby invalidating a resolution declaring an area blighted. The University gained a particular benefit by that declaration. The court said:
... In the instant case, it is true that the prime interests of Councilmen-Professors Lester and Sorenson in the University are in its academic affairs. But the same long standing association which gives these men security in their positions could tend to bind their loyalties to the University in such a manner that they would be interested in all matters affecting the institution. Cf. Zell v. Borough of Roseland, [42 N.J. Super. 75 (App.Div. 1956)] where a member of a planning board voted on a matter affecting a church of which he was but a member, causing the appellate court to invalidate the planning board's action. The potential of psychological influences cannot be ignored. Cf. Aldom v. Borough of Roseland, supra, 42 N.J. Super., at p. 507. We do not hold that these matters had an effect in the instant case. Nevertheless, we perceive the rule to be that the mere existence of a conflict, and not its actual effect, requires the official action to be invalidated. [Citation.] [Griggs v. Princeton Borough, supra, 33 N.J. at 220]
There is no reason to depart from the general rule here. Employment of plaintiffs by the Board of Education requires that the Board of Adjustment's action be invalidated.
The conflict is no more remote as to plaintiffs whose spouses are employed by the Board of Education. While every case must turn on its facts, ordinarily one would expect each spouse to benefit from the income and share the loyalties derived from the other's employment. There is no contrary evidence here. In re Gaulkin, 69 N.J. 185 (1976), does not hold otherwise. There the court released the wife of a judge from an administrative ban on political activities that had been applied to judges and their spouses in this State. The court declined to prohibit the non-judicial spouse from exercising her First Amendment rights so long as the judicial spouse does not associate himself even *106 socially with her political activities and so long as no part of those activities is funded by marital assets including use of the marital home for meetings. Gaulkin does not permit a judge to decide a case in which his spouse's employer is a litigant. A member of a board of adjustment in exercising quasi-judicial power, is subject to the same disqualification. See Kramer v. Bd. of Adjust., Sea Girt, 45 N.J. 268, 282 (1965).
When a public official's tie is to a more distant relative and that relative's position with his employer would obviously be unaffected by the public official's action, disqualification may not be required. See Van Itallie v. Borough of Franklin Lakes, 28 N.J. 258 (1958) (councilman's brother a longtime accountant-bookkeeper for a corporation interested in the adoption of a zoning ordinance).
Finally plaintiffs ask us to invoke an exception to the general rule of disqualification where there is "an imperative reason" to do so "in order to prevent a failure of justice." State ex rel. Winans v. Crane, 36 N.J.L. 394, 399 (Sup.Ct. 1873). It has been said that the exception will be applied only in the case of "stern necessity." Pyatt v. Mayor and Council of Dunellen, supra, 9 N.J. at 557. In Griggs the exception was not applied even though the council was left without a quorum to act on the matter. (Two other councilmen employed by the University had voluntarily disqualified themselves.) Here a quorum remains albeit without the ability to cast five affirmative votes to grant a variance. The Board of Adjustment may nevertheless deny the application either by negative vote or for lack of five affirmative votes. See Kessler v. Bowker, 174 N.J. Super. 478, 488 (App.Div. 1979). Either way, a record will have been made on which the governing body can act de novo in the event of an appeal. See Evesham Tp. Bd. of Adj. v. Evesham Tp., 86 N.J. 295, 300-301 (1981).
Affirmed.