233 N.J. Super. 642 (1989)
559 A.2d 883
JOAN M. ALLEN AND PAUL C. BRUSH, INDIVIDUALLY ON BEHALF OF THE TOWNSHIP OF DOVER, AND AS MEMBERS OF THE DOVER TOWNSHIP COMMITTEE, PLAINTIFFS,
v.
TOMS RIVER REGIONAL BOARD OF EDUCATION; RODEN S. LIGHTBODY, MAYOR AND COUNCIL OF BEACHWOOD BOROUGH; WILLIAM T. HORNIDGE, DOMINICK GRIESI, GERALD W. LACROSSE, NORMAN BROWN, PARKER LEACH, PATRICIA MORAN, JOHN TILTON, AND JOSEPH F. ZACH, OCEAN COUNTY SUPERINTENDENT OF SCHOOLS, DEFENDANTS. BOROUGH OF PINE BEACH, PLAINTIFF,
v.
TOMS RIVER REGIONAL BOARD OF EDUCATION; JOSEPH F. ZACH, OCEAN COUNTY SUPERINTENDENT OF SCHOOLS, AND BOROUGH OF BEACHWOOD, DEFENDANTS.
Superior Court of New Jersey, Law Division Ocean County.
Decided April 26, 1989.
*643 William A. Ward, for plaintiffs Joan M. Allen and Paul C. Brush (Cordo, Murphy and Ward, attorneys, Joan L. Murphy on the brief).
Douglas J. Hull, for plaintiff Borough of Pine Beach (Summerill and Hull, attorneys).
Joseph Dempsey, for defendant Toms River Regional Board of Education.
Edmund J. Corrigan, for defendant Roden S. Lightbody.
Ronald E. Hoffman for defendant Borough of Beachwood (Hiering & Hoffman, attorneys).
Alfred E. Ramey, Jr., Deputy Attorney General, for defendant Joseph F. Zach (Peter N. Perretti, Jr., Attorney General).
*644 Edward J. Delanoy, Jr. for amicus curiae Borough of South Toms River (Russo, Foster, Secare & Ford, attorneys).
SERPENTELLI, A.J.S.C.
This case implicates the seldom used doctrine of necessity which allows an official to participate in public business notwithstanding an otherwise disqualifying conflict. The issue is whether the doctrine is properly invoked in the following circumstances.
The Township of Dover and the Boroughs of South Toms River, Beachwood and Pine Beach are the constituent members of the Toms River Regional Board of Education. On April 4, 1989, voters in all of these municipalities rejected the board's proposed budget. That rejection requires the governing bodies of these municipalities to consult with the board and thereafter certify the amount which they deem necessary to provide a thorough and efficient system of schools in the district. In regional school districts all constituent municipalities must concur in the amount of money to be raised by local taxation for school purposes. Thus the four certifications must be substantially identical.
On April 20, 1989, the Borough Clerk of the Borough of Beachwood informed the Ocean County Superintendent of Schools that four members of the Beachwood Council had indicated that they would not be able to participate in budget discussions with the other municipalities and the board of education because of conflicts of interest. The borough clerk advised that the borough council would not be able to obtain a quorum for discussion or certification of the budget. The county superintendent then concluded that the four governing bodies would not be able to certify the amount necessary for school purposes and that N.J.S.A. 18A:22-38 required that the Commissioner of Education should determine the amount which *645 is necessary to provide a thorough and efficient system of public schools in the district.[1]
Allen and Brush, two members of the Dover Township governing body, obtained an order to show cause seeking to compel the board to engage in consultation with the four municipalities pursuant to the provisions of N.J.S.A. 18A:13-19 and N.J.S.A. 18A:22-37.[2] The Borough of Pine Beach filed a complaint seeking similar relief. The two suits have been consolidated. The court first decided that it should proceed to resolve the controversy notwithstanding the Commissioner's asserted jurisdiction under N.J.S.A. 18A:6-9. Determining that this matter was of public importance requiring prompt disposition and was a question of law not requiring administrative expertise, the court found that the interest of justice required departure from the doctrine of exhaustion of administrative remedies. Matawan v. Monmouth Cty. Bd. of Taxation, 51 N.J. 291 (1968). The court entered an interim order directing that the consultation take place and that the conference need not be attended by a majority of any of the governing bodies but rather by representatives who could engage in the information gathering process.[3] The court reserved the issue of whether, after completion of the consultation, the Beachwood Council could legally *646 act on a certification of the necessary funds given the alleged conflicts of four of its seven members. This opinion addresses that issue.
At the outset, all parties agree that the four members of the Beachwood Council do have conflicts which would normally preclude their acting with respect to matters affecting the board of education. Councilman Brown's wife is a special education counselor. Councilman Leach's wife is a special student aide-counselor. Councilwoman Moran's husband is an administrator in charge of special education. Councilman Tilton is a substitute teacher in the Toms River school system.
In Sokolinski v. Woodbridge Tp. Municipal Council, 192 N.J. Super. 101 (App.Div. 1983), a declaratory judgment was sought to determine whether five members of the Woodbridge Board of Adjustment were disqualified to hear a variance application concerning property owned by the Woodbridge Board of Education. Two of the five board of adjustment members were employed by the board of education: a tenured teacher and a tenured janitor. Three other board of adjustment members were spouses of board of education employees: a tenured teacher, an untenured bus driver and an untenured cafeteria worker. The Appellate Division found all five had a conflict of interest. I need not cite other voluminous authority supporting that conclusion. The facts in Sokolinski are not distinguishable from the facts before the court. Therefore, I find that the four Beachwood Council members are in conflict.
The parties also concede that since four of the seven members of the Beachwood Council have a conflict of interest, the council is precluded from mustering a quorum for the purposes of determining the budget question. Beachwood's attorney cited Aurentz v. Planning Board of Tp. of Little Egg Harbor, 171 N.J. Super. 135, 141 (Law Div. 1979), for that proposition. It appears that Aurentz correctly states the rule that the presence of members who are disqualified by conflict of interest cannot be used to create a quorum so that the remaining *647 members can act. Downs v. Mayor and Council of South Amboy, 116 N.J.L. 511, 515 (E & A 1936); Griggs v. Princeton Borough, 33 N.J. 207, 220-21 (1960); Fanwood v. Rocco, 33 N.J. 404, 417 (1960).
The question remains whether the court should direct the Beachwood Council to take formal action on the budget issue notwithstanding the conflict and consequent absence of a quorum. The answer to that question turns on whether the doctrine of necessity should be applied in this case. There have been a number of decisions dealing with this principle, many of them quite ancient and some of them not always consistent. An analysis of the more recent authority leads to the conclusion that the doctrine is narrowly circumscribed but that it still has vitality in a limited group of cases.
The starting point of my review is Downs v. Mayor and Council of the City of South Amboy, supra, which seems to have formed the basis for modern analysis of the doctrine. The governing body in that case consisted of five members, three of whom had some involvement with railroad companies which were to be affected by the adoption of an ordinance pending before the South Amboy council. The ordinance dealt generally with street vacations and street realignment necessary to effectuate the installation of a modern rail system to South Amboy. The Court said:
It may be argued that the common council, in weighing the advantages to many and the inconvenience to some, was engaged in a quasi-judicial act; and upon that hypothesis arises one of the fundamental maxims of law, that no man can be judge in his own case. [citation omitted] I am not convinced that the three members of council who voted for the ordinance were so situated as to come within the reach of that rule, but if it be considered that they were, we are met with an exception to the rule, which is that if by the disqualification of a judge there would be no means of proceeding, he may take such cognizance of the case as is absolutely necessary. [citation omitted] There were five members of the common council. With these three out, there would be no council and therefore no body to pass upon this locally important matter which, for reasons within the record, would not permit of delay. [116 N.J. at 514-15]
The court concluded that the governing body could act notwithstanding the potential disqualification.
*648 In Pyatt v. Mayor and Council of Dunellen, 9 N.J. 548 (1952), the governing body had before it a proposed ordinance which would allow the expansion of a business which constituted Dunellen's largest industry. That expansion required the vacation of a portion of a road. The council voted four to two in favor of the ordinance. Two of the affirmative votes were cast by council members who were employed by the business affected by the ordinance. The court found that those members were in conflict and that the ordinance must be set aside. It was urged that the council members must be permitted to vote under the principle set forth in the Downs case. However, the Supreme Court disagreed by finding that the facts did not bring the case within the rule of necessity. It held that four members of the borough council were sufficient for a quorum and, although at least three votes were necessary to adopt the ordinance, the mayor had a vote in the case of a tie. Thus, the first limitation on the rule was clearly enunciated. If sufficient members remain qualified to act, there is no basis to invoke the doctrine.
Griggs v. Princeton Borough, supra, developed a further limitation. In that case the governing body approved a planning board's determination of blight. The blight resolution had the potential effect of benefiting Princeton University. Four of the members of the governing body were employed by the university but two of them did not vote. The other two did vote and were found by the Supreme Court to be in conflict. The two councilmen then argued that the rule of necessity should apply to the case. They asserted that since two other councilmen had disqualified themselves from voting and the council consisted of six persons, if they also disqualified themselves, there could be no quorum and thus no vote. The Supreme Court said:
We hold, however, that while certain elements raising the rule of necessity are present in the instant case, nevertheless the matter being voted upon was not of such vital importance as to allow resort to the exception of the general rule of disqualification. It was stated in an early case in this State dealing with the exception to the rule of disqualification in cases of conflict of interests that `to *649 justify a violation of the maxim, there should be an imperative reason for it, in order to prevent a failure of justice, and in determining that, the greatest care should be exercised.' [citation omitted; 33 N.J. at 220-21]
The Court, therefore, determined that the blight declaration should be laid aside until a council free from the conflict issues was able to act. Thus, Griggs stands for the proposition that the doctrine of necessity can only be applied in instances of stern necessity, that is, where actions cannot be laid aside until a later date when the body could obtain a quorum of members who do not have a conflict with respect to the issues involved.
In the same year as Griggs the Supreme Court decided Fanwood v. Rocco, supra. In that case, the borough council considered the transfer of a liquor license. Five of the six councilmen were members of a Presbyterian church which had opposed the transfer of the license. The Court found that if a quorum could have been convened without such councilmen participating, the proper course would have been for them to disqualify themselves. However, the Court concluded that a quorum was not possible without their participation. The Court also found that the issue was one involving widespread local sentiment. It, therefore, sustained the right of the members to participate and, while it did not cite authority for that proposition, it is evident that it relied upon the necessity of the situation to authorize them to vote. The Fanwood case highlights that the presence of an important public issue is a prerequisite to the invocation of the doctrine of necessity.
The case of Cranberry Lake Quarry Co. v. Johnson, 95 N.J. Super. 495 (App.Div. 1967), also emphasizes that the impact on public welfare is an important consideration in determining whether the doctrine of necessity should be invoked. In that case an ordinance was adopted which comprehensively regulated quarrying activities. It was alleged that three of the members of the governing body had disqualifying interests in one of the quarry operations. The court suggested that the interests were residual and questioned whether a conflict actually existed. However, the court held that even if the three defendants *650 were in conflict, the record showed a reasonable public necessity for the ordinance and a patent desirability of such legislation in the interest of the public welfare. It cited Downs and Pyatt. In so doing, it rejected the artificial distinction found in some earlier cases between acts which were quasi-judicial as opposed to legislative. It reasoned that the doctrine of necessity could apply to either type of conduct.
Sokolinski v. Woodbridge Tp. Municipal Council, supra, represents the most recent application of the doctrine. As noted above, the Woodbridge Board of Adjustment received a variance application for property owned by the Woodbridge Board of Education. The board of adjustment consisted of seven regular members and two alternates. Two were employed by the board of education and three were spouses of board of education employees. The court found all five of these members disqualified. As a result, only four members were not affected by a conflict. While the four members constituted a quorum, five affirmative votes were needed to approve the variance. The plaintiffs in a declaratory action sought to invoke the exception to the general rule of disqualification where there is an imperative reason to do so, citing the doctrine of stern necessity discussed in Pyatt. However, the Appellate Division rejected the argument and ruled that the board of adjustment could deny the application either by negative vote or for lack of five affirmative votes. Either way, the court reasoned, a record could then be made upon which the governing body could act de novo in the event of an appeal. The Sokolinski case, which has been criticized by some writers,[4] seems to stand for the proposition that when the same relief is available to the plaintiff in another forum stern necessity is not present. Thus, since the governing body could act de *651 novo on the application, there was no reason to authorize the board of adjustment to act on the merits.
The decisions I have traced clearly define the scope of the doctrine of necessity. It will be invoked in those circumstances in which there is a pressing public need for action (that is, the matter cannot be laid aside until another date), there is no alternative forum which can grant the same relief and the body is unable to act without the members in conflict taking part. It is evident that the requisite elements of the doctrine are present in the case before the court. The public clamor with respect to the proposed budget is documented in the record. The public insistence that there be a review by the governmental authorities is equally documented. The budget is very large and will have a significant impact on all of the taxpayers in the constituent municipalities. While a budget review can occur before the Commissioner of Education, that review does not allow for the public input which would be received by each of the governing bodies so that direct public involvement will be denied. The statutory scheme for the budget process evinces an intention not only to give the public the first say by way of its vote but also additional participation before the governing body and the board of education in reshaping the budget in the event it is defeated. Finally, since the Beachwood Council could not achieve a quorum with four of its seven members in conflict, it is only by authorizing those four members to act that the council can fulfill its statutory obligation to review and certify the amount necessary to be appropriated and address an issue of substantial importance in which the citizenry has a right to participate.
The court, therefore, authorizes and directs all of the members of the Beachwood Council to attend a meeting convened for the purpose of certifying the amount of money necessary to provide a thorough and efficient system of schools within the district.
NOTES
[1] N.J.S.A. 18A:13-20, which is applicable to regional boards, provides a procedure similar to N.J.S.A. 18A:22-38.
[2] N.J.S.A. 18A:13-19 is applicable to regional school boards. N.J.S.A. 18A:22-37 is applicable to Type II school districts. The Toms River school system is a Type II district governed by a regional board.
[3] Defendant Lightbody is one of five members of the Dover Township Committee. Two other members of that body had disqualified themselves because of conflicts of interest. It was alleged that Lightbody intended to absent himself from the meetings of the Dover Township Committee when the budget issue was discussed, thereby precluding a quorum. However, on the return date of the order to show cause, Lightbody's counsel stipulated that Lightbody would attend all meetings if the court ruled that Beachwood could legally proceed with the budget review process. His presence would provide a quorum for the Dover Township Committee.
[4] See e.g. W. Cox, New Jersey Zoning and Land Use Administration, Section 3-4 (1988).