762 A.2d 710 (2000)
335 N.J. Super. 452
Richard A. GUNTHNER, Plaintiff,
v.
PLANNING BOARD OF THE BOROUGH OF BAY HEAD, Defendant.
Superior Court of New Jersey, Law Division, Ocean County.
Decided August 28, 2000.
*712 Roger J. McLaughlin, Neptune, for plaintiff (McLaughlin, Bennett, Gelson & Cramer, attorneys).
Steven A. Zabarsky, Toms River, for defendant (Citta, Holzapfel, Zabarsky, Leahey & Simon, attorneys). *711
*713 SERPENTELLI, A.J.S.C.[1]
The enactment of legislation to authorize the creation of a consolidated land use board in certain municipalities (N.J.S.A. 40:55D-25(c)), has created several knotty issues that were not addressed in the enabling statute. This case highlights one of them.[2]
As originally passed, N.J.S.A. 40:55D-25(c)(1) limited creation of the consolidated board to municipalities having a population of 2,500 or less. The statute was amended by Chapter 186 of the Laws of 1994 to increase the population limit to 10,000 people. The amendment was driven, in part, by the passage of the Local Government Ethics Law, (N.J.S.A. 40A:9-22.1 to 40A:9-22.5) (hereinafter "the Ethics Law"), in the belief that the passage of those restrictions would "greatly reduce the number of qualified persons, especially in small municipalities, willing to serve on local boards." Assembly Local Government Committee Statement, Assembly No. 826, September 29, 1994. Thereafter, the population limit was increased to 15,000 by Chapter 27 of the Laws of 1999. The same concept applies to all municipalities with greater than 15,000 people, if the unitary board is authorized by referendum. N.J.S.A. 40:55D-25(c)(2).
The legislative concern regarding the impact of its government ethics legislation on small communities has proven well-placed. Indeed, this litigation has been spawned by a claim of conflicts which threaten to disable the defendant Bay Head Planning Board (hereinafter "Board"), a consolidated board created pursuant to N.J.S.A. 40:55D-25(c)(1). This suit raises the question of how such a board can function if it cannot muster a quorum as a result of conflicts, particularly in the absence on any statute which authorizes the replacement of conflicted members or provides an alternate procedure in such instances.
The plaintiff, Richard A. Gunthner (hereinafter "plaintiff" or "Gunthner") owns Lots 3 through 7 and Lot 12 in Block 50 as shown on the Tax Map of Bay Head. The property is currently utilized for a marina known as Dale's Yacht Basin. The premises are contiguous to the Bay Head Yacht Club (hereinafter "Yacht Club"), a private, non-profit corporation used to provide boating, athletic and dining facilities for its members.
As part of a forbearance agreement with his mortgagee, Republic Financial Corporation (hereinafter "Republic"), Gunthner filed a development application which would create eight residential lots with a marina. Notice of the application was served on the Yacht Club. According to the uncontradicted certifications filed with the court, prior to the hearing on the application, Gunthner learned that Peter Kellogg (hereinafter "Kellogg"), a member of the Yacht Club, had expressed an interest in acquiring the note and mortgage held by Republic. Allegedly, Kellogg told a Republic representative that he intended to use a portion of the property for a boat museum and another portion to provide additional parking for the Yacht Club.
The plaintiff also determined before the hearing that six of the nine regular members and one of the two alternate members of the Board were members of the Yacht Club. Given Kellogg's offer, its potential benefit to the members of the Yacht Club, and fearing that he could not get a fair and impartial adjudication before the Board, Gunthner brought an Order To Show Cause seeking to disqualify the seven Yacht Club members. Additionally, Gunthner sought a default approval of his *714 completed application pursuant to N.J.S.A. 40:55D-48(c), on the theory that the Board could never obtain a quorum to act on his request within the time required by the statute.
The threshold issue in this case is whether the Board members, who are also members of the Yacht Club, are in conflict to decide this application, notwithstanding their certifications that they can do so fairly and impartially.
The legal principles relating to municipal official conflicts have been comprehensively synthesized in Wyzykowski v. Rizas, 132 N.J. 509, 523, 626 A.2d 406 (1993). The court need not review them here other than to underscore the authority which aids in the disposition of the issue before the court. The law in this area predates either the adoption of the Municipal Land Law Use Law (hereinafter "MLUL") provisions addressing conflicts, N.J.S.A. 40:55D-23(b), or the enactment of the Ethics Law, N.J.S.A. 40A:9-22.1 to -22.25.
Wyzykowski describes the common law rule as follows:
`[a] public official is disqualified from participating in judicial or quasi-judicial proceedings in which the official has a conflicting interest that may interfere with the impartial performance of his duties as a member of the public body.'
supra, 132 N.J. at 523, 626 A.2d 406 (citing Scotch Plains-Fanwood Bd. of Educ. v. Syvertsen, 251 N.J.Super. 566, 568, 598 A.2d 1232 (App.Div.1991)). The MLUL codified the common law principles of municipal conflicts by "expressly prohibiting a planning board member from acting `on any matter in which [the member] has, either directly or indirectly, any personal or financial interest.'" Id. (citing N.J.S.A. 40:55D-23(b)). According to Wyzykowski, the Ethics Law further "refined the definition of a conflict of interest." Id. at 529, 626 A.2d 406. N.J.S.A. 40A:9-22.5(d) provides that:
[no] local government officer or employee shall act in his official capacity in any matter where he, a member of his family, or a business organization in which he has an interest, has a direct or indirect financial or personal involvement that might reasonably be expected to impair his objectivity or independence in judgment[.]
Wyzykowski suggests that one noted commentator believes that the use of the word "involvement" instead of "interest" in the Ethics Law has the effect of broadening the areas of disqualifications to perhaps include even personal friendships. Ibid. However, that analysis need not be pursued in this matter since the court concludes, under any definition, our law and a common sense review interdicts the members involvement in this matter.
The determination whether a particular interest is sufficient to disqualify a board member is necessarily factual in nature and depends upon the circumstances in each case. Wyzykowski, supra, 132 N.J. at 523, 626 A.2d 406 (citing Van Itallie v. Franklin Lakes, 28 N.J. 258, 268, 146 A.2d 111 (1958)). The bottom line is dictated by a practical feel of the situation absent controlling authority. "The question will always be whether the circumstances could reasonably be interpreted to show that they had the likely capacity to tempt the official to depart from his sworn public duty." Ibid. It is not necessary to demonstrate actual proof of dishonesty because only the potential for conflict is necessary. Id. at 524, 626 A.2d 406 (citing Aldom v. Borough of Roseland, 42 N.J.Super. 495, 503, 127A.2d 190 (App.Div.1956)). "A conflicting interest arises when a public official has an interest not shared in common with the other members of the public." Id. (citing Griggs v. Borough of Princeton, 33 N.J. 207, 220-21, 162 A.2d 862 (1960)). Alternatively, "[t]here cannot be a conflict of interest where there does not exist, realistically, contradictory desires tugging the official in opposite directions." Id. (citing LaRue v. Township of East Brunswick, 68 N.J.Super. 435, 448, 172 A.2d 691 (App.Div.1961)).
*715 It is difficult for the court to believe that a typical citizen would not perceive the clear potential for the objective capacity of the Yacht Club members to be impaired in this setting. Whether that will actually happen is not the issue. There is no dispute that Kellogg thought the parcel could be a valuable adjunct to the Yacht Club property and none of the seven members' certifications denies that possibility. As Justice Clifford put it in his dissenting opinion in Wyzykowski, "[I]n the end, we must return to the intent of the conflict-of-interest lawsto maintain public confidence in government...." supra, 132 N.J. at 539, 626 A.2d 406
The same result has been reached in other cases in which the alleged conflict was indirect and within similar settings. In Griggs v. Borough of Princeton, 33 N.J. 207, 162 A.2d 862 (1960), the court invalidated the Borough Council's determination of "blight" because two participating councilmen were professors employed by the university which profited by the designation. Barrett v. Union Township Committee, 230 N.J.Super. 195, 553 A.2d 62 (App. Div.1989), held that amendments to a land use plan were invalid when a councilman voted to pass an ordinance that benefited persons who owned a nursing home in which the councilman's mother resided. Zell v. Borough of Roseland, 42 N.J.Super. 75, 125 A.2d 890 (App.Div.1956), declared a zoning amendment void since a member of the planning board who voted to recommend its approval to the governing body, was a congregant in the church which was favorably affected by the zoning amendment.
Therefore, the court concludes that the seven members of the Yacht Club are in conflict notwithstanding the absence of any overt showing that they cannot be impartial, and despite their affirmative claim that they can judge fairly. However, that finding creates a dilemma to which the court now turns. If the members are disqualified and no other persons can take their place, how can the application be heard and decided?
A municipality may not delegate its zoning power to any organization other than a responsible board created pursuant to statutory authority. East/West Venture v. Fort Lee, 286 N.J.Super. 311, 324, 669 A.2d 260 (App.Div.1996). Thus, if so many members of a zoning or planning board are disqualified from determining an application that the board is unable to produce a quorum, the municipality may not simply allow another body or selected individuals to decide the issue. There are statutory exceptions to this rule contained in the MLUL. N.J.S.A. 40:55D-23.2 provides that if a planning board lacks a quorum because any of its regular or alternate members are prohibited from acting due to a personal or financial interest, regular members of the board of adjustment shall be called upon to act as temporary planning board members in the order specified up to a number necessary to constitute a quorum. N.J.S.A. 40:55D-69.1 provides the same relief for boards of adjustment by allowing planning board members to step in for conflicted board of adjustment members. Regrettably, that procedure is unavailable in this case since Bay Head has a consolidated board and the Legislature has not spoken as to what alternative should be utilized in this scenario.
If a land use board can convene a quorum without its disqualified members, then it should pursue that course of action. Fanwood v. Rocco, 33 N.J. 404, 417, 165 A.2d 183 (1960). However, as this suit demonstrates, that is not always possible. When it is impossible to constitute a quorum, disqualified members may, of necessity, have to vote, but this departure from the disqualification rule should be narrowly circumscribed and only invoked if there is some compelling reason justifying its use. Wyzykowski v. Rizas, supra, 132 N.J. at 528, 626 A.2d 406; Griggs v. Borough of Princeton, supra, 33 N.J. at 221, 162 A.2d 862.
*716 In Allen v. Toms River Regional Board of Educ., 233 N.J.Super. 642, 647, 559 A.2d 883 (Law Div.1989), this court summarized the appellate decisions dealing with those instances in which conflicts left the public body with inadequate membership to constitute a quorum, and identified cases in which the court found the circumstances dictated that members in conflict should be permitted to sit. Generally speaking, the doctrine of necessity is utilized when a pressing public need exists, and it would be detrimental to the public's well-being to bar the disqualified members from participating in a vote. Sokolinski v. Woodbridge Tp., 192 N.J.Super. 101, 106, 469 A.2d 96 (App.Div.1983); Cranberry Lake Quarry Co. v. Johnson, 95 N.J.Super. 495, 521, 231 A.2d 837 (App.Div.1967).
N.J.S.A. 40:55D-48(c) provides:
Upon submission to the administrative officer of a completed application for a subdivision of 10 or fewer lots, the planning board shall grant or deny preliminary approval within 45 days of the date of such submission or within such further time as may be consented to by the developer. Upon the submission of a completed application for a subdivision of more than 10 lots, the planning board shall grant or deny preliminary approval within 95 days of the date of such submission or within such further time as may be consented to by the developer. Otherwise, the planning board shall be deemed to have granted preliminary approval to the subdivision. [emphasis added]
Whenever reasonably possible, the MLUL should be construed in favor of the governmental authority so as to protect the public and not to frustrate the purpose of the enactment. Levin v. Livingston Tp., 35 N.J. 500, 507, 173 A.2d 391 (1961). As the above cited statute demonstrates, the rule that all statutory interpretation should be reasonably construed favorably toward governmental authority should not be applied so strictly as to impinge on the legitimate interests of developers. Ibid. They are entitled to procedural due process and substantive fairness. Ibid.
A board's inability to muster a quorum may lead to a substantial holdup in the grant or refusal of a variance. In that case, if the delay caused by the disqualifications is long enough, the developer may seek to implement the automatic approval statute. N.J.S.A. 40:55D-48(c). This default mechanism should be applied with great caution as it can very well frustrate the statutory scheme of the MLUL, which is to serve the public. D'Anna v. Washington Tp. Planning Board, 256 N.J.Super. 78, 82, 606 A.2d 417 (App.Div.), certif. denied, 130 N.J. 18, 611 A.2d 656 (1992). Boards and courts should hesitate to apply the default statute absent inattention, inaction or dilatory conduct by the board. Ibid.
The aim of the default approval statute is to prevent boards from delaying or harassing developers in order to extract unwarranted conditions from "legitimate development plans." Manalapan Holding Co. v. Hamilton Twp. Planning Bd., 184 N.J.Super. 99, 108, 445 A.2d 410 (App.Div.1982), overruled on other grounds, 92 N.J. 466, 457 A.2d 441 (1983); D'Anna, supra, 256 N.J.Super. at 82, 606 A.2d 417. That is not what is occurring in this case. Rather, the developer is seeking a loophole to compel automatic approval, thereby depriving the Board of the opportunity to insure that the public interest is adequately protected by a thorough review of the application. Even if the Board is legally obligated to approve the submission, it must have the chance to review it and, if necessary, impose appropriate conditions to protect the public health, safety and welfare. D'Anna, supra, 256 N.J.Super. at 84, 606 A.2d 417.
Therefore, notwithstanding their conflict, the members of the Board should be permitted to rule on the plaintiff's application consistent with their duty to protect the public interest. Unwarranted default *717 approval provides the justification for use of the doctrine of necessity. It should be invoked because there is a pressing public need for action, there is no other forum in which the matter can be decided and the board cannot act without the disqualified members. Allen, supra, 233 N.J.Super. at 651, 559 A.2d 883. The court stands as the plaintiff's safeguard against any potential arbitrary result at the municipal level. Of course, in the long run, a legislative solution which might avoid the specter of conflicted members sitting in these matters remains preferable.
NOTES
[1] This opinion supplements a bench decision rendered on July 18, 2000.
[2] This court has previously identified another problem created by the consolidated board statute as it relates to the requisite vote for a special use variance pursuant to N.J.S.A. 40:55D-70(d). Engleside Condo. v. Beach Haven Land Use Board, 301 N.J.Super. 628, 632-34, 694 A.2d 328 (Law Div.1997). Like the question involved in the case at bar, this issue needs a legislative solution.