811 A.2d 962

FRIENDS RETIREMENT CONCEPTS ET AL PLAINTIFF,
v. BOARD OF EDUCATION OF THE BOROUGH OF
SOMERVILLE DEFENDANT

Superior Court of New Jersey
Law Division Somerset County

Decided July 25, 2002.

204

206

*James J. Shrager,* Somerville, (*Norris, McLaughlin & Marcus, P.C.*) for plaintiffs Friends Retirement Concepts, et al.; (*Jeremy I. Silberman,* on the brief).

*Michael J. Rogers,* Allenwood (*McDonald, Rogers & Rizzolo,* attorneys) for defendant, Board of Education of the Borough of Somerville.

*C. Douglas Reina* (*Abrams, Gran, Hendricks, Reina & Rosenberg,* attorneys) for the Borough and Borough Council of Somerville.

HOENS, J.S.C.

Before the Court is the plaintiffs' motion for summary judgment in this action in lieu of prerogative writ. The defendant has opposed the relief sought by the plaintiffs. While the facts on which the motion is based are not in dispute, the motion raises an issue of law not previously decided by any Court, as a result of which we address it at length.

This dispute arises out of the decision by the Somerville Board of Education to permit the Somerville Recreation Commission (the "Recreation Commission") to build two adult-sized baseball fields with twelve 70–foot lighting towers on property owned by the Board of Education. The plaintiffs contend that two of the Board members violated the provisions of the School Ethics Act, *N.J.S.A.* 18A:12–21 *et seq.* by participating in the debates on the proposal or by voting for the proposal as a result of which the resolutions authorizing the fields and the lighting must be declared invalid.

The Board of Education is a governmental entity charged with establishing, maintaining and supervising public education in the Borough of Somerville. Somerville and the neighboring township of Branchburg are parties to a send/receive relationship pursuant to which Branchburg, which does not operate its own high school, is permitted to send high school age students to the Somerville facility. For reasons which are of no consequence to this decision, the statute which set the representation on the Board of Education as between Branchburg and Somerville has been overturned in federal court, as a result of which the interim solution for representation purposes has been to permit Branchburg to elect six representatives to the 15 member Board of Education with the remaining nine individuals being elected by Somerville. None of the parties to this dispute has raised any challenge, however, to the right of any of the members of the Board to vote on the proposals here under attack by virtue of residence or representation. In fact, because the high school students were anticipated to be among the users of the fields being proposed, the right of the Branchburg representatives to vote on the proposals is unchallenged. The Board of Education, among other things, owns and operates the Van Derveer Elementary School, a public school for students attending kindergarten through fifth grade. The Van Derveer School occupies a portion of the site where the Recreation Commission proposed to construct the baseball fields and the lighting towers.

The plaintiffs are parties who oppose this proposal, including Friends Retirements Concepts, d/b/a Arbor Glen, Richmond Shreve and Marguerite Chandler. Plaintiff Friends Retirement Concepts, Inc., is a Quaker-directed non-profit corporation that

owns and operates a residential retirement community known as Arbor Glen. The community consists of approximately 330 people and includes 213 single family homes and apartments where the majority of the residents live independently. The community also operates a health center, which has approximately 85 beds, and which provides continuing care including assisted living, recuperative care, and skilled nursing services as needed by the residents. The Arbor Glen Community is located on a tract of land situated directly adjacent to the Van Derveer School property, and shares its western property line with the Van Derveer School site. A number of the residents of Arbor Glen have windows directly overlooking the school property. Plaintiffs Richmond Shreve and Marguerite Chandler are Somerville Borough residents. Marguerite Chandler is the Chair of the Friends Retirement Concepts Board, and her husband Richmond Shreve has organized and leads the Arbor Glen residents and certain other residents of the Borough who oppose the construction of the lighted fields at the Van Derveer School.

The events that give rise to this litigation began in 1999, when the Recreation Commission made a proposal to the Board of Education that the Borough be permitted to construct new baseball fields at the Van Derveer Elementary School. The proposal provided that the baseball fields would be owned by the Board of Education, which owns the site, but that the Recreation Commission would be permitted to use the fields for the adult and youth leagues that it organizes. As part of its plan, the Recreation Commission hired the Reynolds Group, Inc. to design the fields and it hired Universal Sports Lighting to design the lighting it believes is needed for its purposes respecting nighttime use of the fields. The Recreation Commission gained significant support for its proposals from another entity known as Somerville Baseball Inc. That group organizes league baseball games in Somerville including but not limited to little league games and anticipates utilizing the fields for its games as well. Somerville Baseball Inc. and its President Steven Krajewski were active participants in pressing the Board of Education to agree with the plans and

proposals of the Recreation Commission respecting the development and use of the property at the school.

The Commission's plans envision the construction of two adult-sized baseball fields, with 90–foot baselines and outfield distances of at least 300 feet. Home plate for one of the fields will be approximately 60 feet from the Arbor Glen property line, and other parts of the fields will be far closer to Arbor Glen. The plans also call for the erection of twelve 70–foot lighting towers, each one topped with either seven, eight or nine powerful lights capable of illuminating night-time baseball games. One of the towers is planned to be built only 30 feet from the Arbor Glen property line. At 70 feet in height, the lighting towers will exceed the 25 foot height restriction on outdoor lighting fixtures set by the Somerville Land Use Ordinance.

By May of 2001, the Recreation Commission had prepared two written proposed agreements to effectuate its plan, namely, the Field Improvements Agreement and the Lighting Agreement, which it proposed would be executed by the Recreation Commission, the Borough and the Board of Education and which would create the lighted fields at the School. The specific provisions of the Agreements are not in dispute and the terms are not relevant to the issue before this Court. On June 5, 2001, the Board of Education met and discussed the proposals. The debate on the proposals was apparently quite spirited. To begin with, the Branchburg representatives to the Board of Education included newly elected members who unsuccessfully sought an opportunity to become more familiar with the proposal before voting. Among the other Board members, the Board President expressed concerns about the adverse impact of the plan on any future needs for expansion of the School itself and about the potential cost to the Board of the lights given the contractual provisions respecting bonding for the costs of the improvements. There is no doubt but that the two Board members about whom plaintiffs have raised a question, Kenneth Cornell and Lili Krajewski, argued in favor of the proposals vigorously both in public meetings and during the

course of at least one closed session of the Board. At the close of the debate, Mr. Cornell was advised by the Board's attorney that he had an unavoidable conflict of interest and that as a result he should not vote on the proposals, which advice he followed. Immediately thereafter, the Board voted and passed the two resolutions the effect of which was to agree to both of the Commission's proposals. The vote to permit the construction of the athletic fields was 10–0. The vote to permit the construction of the lighting towers was 5–4.

Plaintiffs thereafter timely filed this complaint in lieu of prerogative writ seeking to overturn the Board's decision. By consent, all work to effectuate the actual construction of the fields or the lights as authorized by the resolutions has been held in abeyance. Plaintiffs assert that at least two members of the Board of Education, Kenneth Cornell and Lili Krajewski, had conflicts of interest which required them to abstain from the Board's discussion of the proposals and from voting on the proposals. Despite these conflicts of interests, plaintiffs contend that Kenneth Cornell and Lili Krajewski not only participated in the Board's deliberations about the athletic fields but actively worked to persuade other members of the Board to enter into the agreements with the Recreation Commission to build the fields and construct the light towers and that their participation irrevocably tainted the proceedings and the decision. As a result, plaintiffs have filed this motion for summary judgment to invalidate the resolutions passed and the agreements entered into thereafter by the Board.

The facts on which the motion is based are not in dispute. The issue before the Court, however, is one not previously decided in this State, namely, the meaning and interpretation of the School Ethics Act, 18A:12–21 *et seq.* That Act, which was amended in 1999, now provides in relevant part:

No school official shall act in his official capacity in any matter where he, a member of his immediate family, or a business organization in which he has an interest, has a direct or indirect financial involvement that might reasonably be expected to impair his objectivity or independence of judgment. No school official shall act in his official capacity in any matter where he or a member of his immediate family

has a personal involvement that is or creates some benefit to the school official or member of his immediate family.

*N.J.S.A.* 18A:12–24. The Somerville Board of Education has adopted, as a part of its by laws, its own statement reflecting its understanding of the principles governing conflicts of interest as well. Its bylaws provide:

No board member shall act in his or her official capacity in any matter where he or she, a member of his or her immediate family, or a business organization in which he or she has an interest, has a direct or indirect financial or personal involvement that might reasonably be expected to impair his or her independence of judgment in the exercise of official duties.

Bylaws of the Somerville Board of Education, Section 0142, Rev. August 15, 2000.

While there is no published legislative history to further explain the meaning or intent of the School Ethics Act and while there are no published decisions to govern us in our analysis of the Act, the legislative findings and declarations of the Act, *N.J.S.A.* 18A:12–22, provide some guidance. In that portion of the Act, the Legislature stated:

The Legislature finds and declares:

a. In our representative form of government it is essential that the conduct of members of local boards of education and local school administrators hold the respect and confidence of the people. These board members and administrators must avoid conduct which is in violation of their public trust or which creates a justifiable impression among the public that such trust is being violated.

b. To ensure and preserve public confidence, school board members and local school administrators should have the benefit of specific standards to guide their conduct and of some disciplinary mechanism to ensure the uniform maintenance of those standards among them.

*N.J.S.A.* 18A:12–22. While never before interpreted in a published opinion, certainly the standard set forth in the Act is not difficult to analyze. Plaintiffs suggest that Act has been interpreted by the School Ethics Commission in several unpublished opinions which give guidance to this Court's analysis. Defendants, who do not address the School Ethics Act directly, rely instead on decisions of our courts construing conflicts of interest rules applicable to governmental entities generally, implying that the standards to be applied here are no different. We begin, then, with an

analysis of the generally accepted rules governing conflicts of interest generally.

█ The legal principles relating to municipal officials and conflicts of interest have been comprehensively set forth by our Supreme Court. *Wyzykowski v. Rizas,* 132 *N.J.* 509, 626 *A.*2d 406 (1993). As the Court has held, under the common law rule, "a public official is disqualified from participating in judicial or quasi-judicial proceedings in which the official has a conflict of interest that may interfere with the impartial performance of his duties as a member of the public body." *Id.* at 523, 626 *A.*2d 406 (citing *Scotch Plains–Fanwood Bd. of Educ. v. Syvertsen,* 251 N.J.Super. 566, 568, 598 A.2d 1232 (App.Div.1991)). In *Wyzykowski,* the Supreme Court of New Jersey recognized that there are essentially four types of situations that require disqualification:

(1) 'Direct pecuniary interests,' when an official votes on a matter benefitting the official's own property or affording a direct financial gain;

(2) 'Indirect pecuniary interests,' when an official votes on a matter that financially benefits one closely tied to the official, such as an employer or family member;

(3) 'Direct personal interest,' when an official votes on a matter that benefits a blood relative or close friend in a non-financial way, but a matter of great importance, as in the case of a councilman's mother being in the nursing home subject to the zoning issue; and

(4) 'Indirect personal interest,' when an official votes on a matter in which an individual's judgment may be affected because of membership in some organization and a desire to help that organization further its policies.

*Id.* at 525–26, 626 A.2d 406 (citing Michael A. Pane, *Conflict of Interest: Sometimes a Confusing Maze, Part II, New Jersey Municipalities,* March 1980, at 8–9.).

█ In part, the defendants suggest that the School Ethics Act provides for a more lenient standard against which to judge claims of conflict of interest, implying that unless the claimed interest gives rise to pecuniary benefit it should be insufficient. This Court does not agree, however, with the suggestion that the School Ethics Act is any less rigorous or that our vigilance should be less exacting than the standard set forth respecting municipal conflicts of interest generally. Rather, it appears from the language of the Act itself that it is an effort to codify the common

law. As a result, we hold that the same standards set forth by our Supreme Court in *Wyzykowski* apply to claims of conflict of interest arising under the School Ethics Act.

We reach this conclusion for several reasons. First, in general, in municipal matters, it is the public policy of this State that public officials avoid even the appearance of impropriety. "[T]he moral philosophy is that next in importance to the duty of the officer to render a righteous judgment is that of doing it in such a manner as will beget no suspicion of the pureness and integrity of his action." *Aldom v. Borough of Roseland*, 42 *N.J.Super.* 495, 502, 127 *A.*2d 190 (App.Div.1956). Even were that not the case, the inclusion in the Legislative Findings and Declarations of the School Ethics Act of language respecting a concern for any "justifiable impression among the public," *N.J.S.A.* 18A:12–22(a), supports the suggestion that a more lenient standard was not intended. More to the point for the dispute here, the Board of Education's own bylaws set a high standard, referring to reasonable expectations, and specifically defining interest in both financial and personal terms, thus setting a high standard against which to judge claims of conflict of interest.

The determination of whether a particular interest is sufficient to disqualify a board member is necessarily factual in nature and depends upon the circumstances in each case. *Aldom v. Borough of Roseland, supra,* 42 *N.J.Super.* at 502, 127 *A.*2d 190; (citing *Van Itallie v. Franklin Lakes,* 28 *N.J.* 258, 268, 146 *A.*2d 111 (1958)). Absent controlling authority, the decision in issue is dictated by a practical feel for the situation. *Gunthner v. Planning Board of the Borough of Bay Head,* 335 *N.J.Super.* 452, 460, 762 *A.*2d 710 (Law Div.2000). Essentially, "[t]he question will always be whether the circumstances could reasonably be interpreted to show that they had the likely capacity to tempt the official to depart from his sworn public duty." *Id.* An actual conflict of interest is not the decisive factor, nor is "whether the public servant succumbs to the temptation," but rather whether there is a potential for conflict. *Griggs v. Borough of Princeton,*

33 *N.J.* 207, 219, 162 *A.*2d 862 (1960) (citing *Aldom v. Borough of Roseland, supra,* 42 *N.J.Super.* at 503, 127 *A.*2d 190). "A conflicting interest arises when the public official has an interest not shared in common with the other members of the public." *Wyzykowski v. Rizas, supra,* 132 *N.J.* at 524, 626 *A.*2d 406 (citing *Griggs v. Borough of Princeton, supra,* 33 *N.J.* at 220–221, 162 *A.*2d 862). On the other hand, "[t]here cannot be a conflict of interest where there does not exist, realistically, contradictory desires tugging the official in opposite directions." Id. (citing *LaRue v. Township of East Brunswick,* 68 *N.J.Super.* 435, 448, 172 *A.*2d 691 (App.Div.1961)).

In the case before this Court, Kenneth Cornell was both a member of the Board of Education and the Vice Chair and Commissioner of the Recreation Commission at the time the Recreation Commission was making its proposal to the Board of Education. Moreover, he was actively involved in the Recreation Commission's efforts to gather public support for the specific project. He attended and actively participated in both publicly held Board of Education meetings and in confidential executive sessions of the Board during which the Recreation Commission's proposals were discussed. He attempted to convince the other Board members to vote in favor of the proposals both at those meetings and in individual conversations with them. In fact, the Board's attorney, noting that Mr. Cornell had a conflict of interest, instructed him not to vote at the June 5, 2001 meeting. But by that time, Mr. Cornell had already participated in the Board's consideration of the issue for nearly two years, starting when the Recreation Commission first proposed the plan to the Board, and only ending on the night when the crucial vote was taken.

In light of these circumstances, it is simply beyond debate that Mr. Cornell did indeed have a conflict of interest. He had an "indirect personal interest" in the outcome of the proposal because he was the Vice Chair and Commissioner of the Recreation Commission at a time when the Recreation Commission clearly stood to benefit from the passage of the proposals by the Board on

which he sat. Nor is his last minute recusal from the vote itself sufficient to overcome the taint. A board member may not cure a conflict of interest by abstaining from the vote after he has already participated in the Board's discussion and voiced his opinion. "An official disqualified to vote on any measure, for any reason, must observe the substance as well as the form of his abstention. It simply is insufficient for him to decline to vote while, at the same time, he seeks to influence what the vote will be." *Szoke v. Zoning Board of Adjustment of the Borough of Monmouth Beach*, 260 *N.J.Super.* 341, 616 *A.*2d 942 (App.Div. 1992) (quoting *Darrell v. Governing Body of Township of Clark*, 169 *N.J.Super.* 127, 404 *A.*2d 346 (App.Div.1979), *aff'd* 82 *N.J.* 426, 413 *A.*2d 610 (1980)). Mr. Cornell should have abstained from all deliberations that occurred with respect to the baseball field proposals. Having failed to do so, his election, at the instruction of the Board attorney, to refrain from voting in the face of an obvious conflict is insufficient to cure the damage to the deliberative process that his behavior had already created.

Likewise, Lili Krajewski should have refrained from participating in the deliberations and voting on the proposals. At the time that the Recreation Commission was pressing for the Board on which she sat to agree to build and light the fields, her husband, Steven Krajewski, was President and Commissioner of Somerville Baseball Inc., which the Board acknowledges was a likely user of the baseball fields. Somerville Baseball Inc. organizes little league baseball games in the Borough and Mr. Krajewski was actively lobbying for the proposed fields. He spoke at Board meetings in favor of the proposed fields when his wife was present and sitting as a member of the Board. Mr. Krajewski also spoke privately with individual members of the Board about the proposed fields and lights. Nor was Mrs. Krajewski herself uninvolved in the activity of Somerville Baseball and disinterested in its plans. Mrs. Krajewski held the position of "Shack Coordinator" for Somerville Baseball Inc. and was responsible for running the food concession stand at the little league baseball games

organized by Somerville Baseball Inc. While her civic minded participation in the baseball operation is laudable, it demonstrates a level of commitment to that entity which stood to benefit from her vote in favor of the proposals. Based on the foregoing, there can be no doubt that Mrs. Krajewski had both a "direct personal interest" and an "indirect personal interest" in the plan that obligated her to recuse herself.

Although Mrs. Krajewski's husband resigned as president of Somerville Baseball Inc. a few days before the Board actually voted, that does not relieve her of the pre-existing obligation to disqualify herself from participating and voting on the baseball field resolutions. Mr. Krajewski concededly resigned his role specifically so his wife could vote on the resolutions he favored and had fought for. If it were true that his last minute resignation from his role could serve to insulate her from a conflict, the rules regarding conflicts would become meaningless. Any person faced with a conflict of interest could ignore the conflict of interest laws, participate in deliberations and vote on the matter despite the conflict, as long as on the eve of the vote the person disavowed the interest impeding his or her impartiality. For the Court to find that Mrs. Krajewski's conflict of interest was cured in so facile a manner would be to nullify the purpose and intent of our conflict of interest rules.

Once it is established that a public official has a conflict of interest, any official action taken is considered tainted and must be invalidated. As held by our Supreme Court, "we perceive the rule to be that the mere existence of a conflict, and not its actual effect, requires the official action to be invalidated." *Griggs v. Borough of Princeton,* supra, 33 N.J. at 220, 162 A.2d 862; *see Aldom v. Borough of Roseland, supra,* 42 *N.J.Super.* at 502, 127 *A.*2d 190. Accordingly, the resolutions passed by the Board of Education to enter into the Field Improvement Agreement and Lighting Agreement must be and they are declared invalid.

For all of the foregoing reasons, plaintiffs' motion for summary judgment is granted. An appropriate form of order is enclosed for the convenience of counsel.